## LEHMAN v. CITY OF SAN DIEGO.

(Circuit Court, S. D. California. November 18, 1895.)

### No. 555.

1. MUNICIPAL BONDS—VALIDITY.

Charter power "to borrow money on the faith and credit of the city" gives no authority to issue negotiable bonds for money so borrowed. Brenham v. Bank, 12 Sup. Ct. 559, 144 U. S. 173, Merrill v. Monticello, 11 Sup. Ct. 441, 138 U. S. 673, and Ashuelot Nat. Bank of Keene v. School Dist. No. 7 of Valley Co., 5 C. C. A. 468, 56 Fed. 197, followed.

2. SAME—ISSUANCE AFTER REPEAL OF CHARTER.

Bonds issued by the president and clerk of the board of trustees of a city, after the charter under which they purport to have been issued has been repealed, are void even in the hands of an innocent holder, although, without any fraudulent intent, they were antedated as of a date when the law was still in force.

3. SAME—ISSUANCE UNDER VOID ORDINANCES—RATIFICATION BY LEGISLATURE.

Certain ordinances of a city providing for the issuance of bonds were invalid, but the state legislature thereafter passed an act legalizing, ratifying, and declaring them valid, and providing that all bonds issued and to be issued in accordance with their provisions should be legal obligations of the city. *Held*, that the effect of the act was to make the ordinances part and parcel of the statute, so that the method of issuing the bonds prescribed in the ordinances, namely, by a resolution of the board of trustees directing when and to whom the bonds should be issued and delivered, must be strictly followed, and a disregard thereof rendered the bonds void.

This was an action by A. Lehman against the city of San Diego to recover upon certain bonds and coupons issued by the board of trustees of said city.

S. O. Houghton, for plaintiff.

H. E. Dolittle and T. L. Lewis, for defendant.

ROSS, Circuit Judge (charging jury). The real questions in this case are questions of law, and the law of the case, as declared by the court, you must accept, and return your verdict accordingly. If a wrong conclusion is reached,—if any error is committed,—the responsibility rests with the court, and not with you.

The bonds and coupons sued upon are claimed by the plaintiff to have been issued under and by virtue of the authority conferred upon the board of trustees of the city of San Diego by the thirteenth subdivision of section 10 of an act of the legislature of the state of California approved March 7, 1872, which reads:

"To borrow money upon the faith and credit of the city; but no loan shall be made without the consent to such loan of a majority of the real estate owners of the city residing therein previously obtained."

The bonds sued upon, and the coupons which were attached thereto as parts thereof, and which are also sued upon, are negotiable instruments, and were, as shown by the undisputed evidence, issued for the purpose of carrying out a contract made between a "Citizens' Committee of Forty" of San Diego and Col. Thomas A. Scott. The court instructs you, under the authority of the decision of the supreme court of the United States in the cases of Brenham v. Bank, 144 U. S. 173, 12 Sup. Ct. 559, and Mer-

rill v. Monticello, 138 U. S. 673, 11 Sup. Ct. 441, and of the decision
of the circuit court of appeals for the Eighth circuit in the case
of Ashuelot Nat. Bank of Keene v. School Dist. No. 7 of Valley Co.,
5 C. C. A. 468, 56 Fed. 197, that the bonds so issued were unauthor-
ized by the charter of the city of San Diego approved March 7,
1872.

In respect to the bonds numbered 150, 151, 152, and 153, is-
sued to Frankenthal & Co., the court instructs you, as matter of
law, that as the evidence shows, without conflict, that they were
not, in fact, issued until after the passage of the act of the leg-
islature of the state of California approved April 1, 1876, to rein-
corporate the city of San Diego, and establishing another charter
for it, and repealing all former acts and parts of acts in conflict
with its provisions, including the act of March 7, 1872, by virtue
of which the bonds themselves recite that they were issued, those
bonds, together with the coupons attached thereto, are not valid
obligations of the defendant city. Having been, according to the
uncontroverted evidence, in fact issued by the president and clerk
of the board of trustees of the city after the law under which they
purported to have been issued had been repealed, and having been
falsely antedated as of a date when that law was in force, and
at a date when the persons who signed them as president and
clerk of the board of trustees were not in truth such officers, they
partake of the nature of forgeries, however honest the intentions
of the parties may have been, and notwithstanding the fact that
the president and clerk acted by direction of the board of trustees,
and are no more valid in the hands of an innocent holder than
would be a forged promissory note in the hands of an innocent
holder. The purchasers of negotiable bonds of a municipality
must always take notice of the official character of those who
execute the bonds they buy, and the board of trustees was cer-
tainly without power to direct the issuance of the bonds after all
semblance of statutory authority for their issuance had been re-
pealed.

In respect to the coupons sued upon which constitute a part
of bonds 146, 147, 148, and 149, issued to Bowers, the evidence is
without conflict that they were issued at the time they bear date,
to wit, October 4, 1875, which was prior to the repeal of the act
under which they purport to have been issued.

As the court has already said to you, there was no original au-
thority in the board of trustees for the issuance of such bonds.
But the contention is further made on the part of the plaintiff
that, even if there was no original authority for their issuance,
yet the authority was conferred by the act of the legislature of
the state of California approved February 24, 1874, entitled "An
act to legalize certain bonds of the city of San Diego, and to pro-
vide for the payment of the interest thereon and for the redemp-
tion thereof," the first and second sections of which are as follows:

"Section 1. Charter Ordinance number 7, passed by the board of trustees
of the city of San Diego on the 16th day of September, A. D. 1872, and the
election held in said city in accordance with the provisions of said ordinance

on the 27th day of September, A. D. 1872, are hereby legalized, ratified, confirmed, and declared valid to all intents and purposes.

"Sec. 2. Charter Ordinance number 22, passed and approved by the board of trustees of the city of San Diego on the 3rd day of February, A. D. 1873, is hereby legalized, ratified, confirmed, and declared valid to all intents and purposes, and all bonds already issued or that may hereafter be issued under and in accordance with the provisions of said Ordinance number 22, are hereby declared to be legal and valid obligations of and against said city, and the faith and credit of said city is hereby pledged for the prompt payment of the same annual interest of said bonds so issued or to be issued under the provisions of said Ordinance number 22, and for the redemption thereof according to the tenor and effect of said bonds and the coupons thereto attached."

The two ordinances of the city of San Diego so confirmed are as follows:

### "Charter Ordinance No. 7.

"Be it ordained by the board of trustees of the city of San Diego, that an election be held on Friday, the twenty-seventh day of September, A. D. 1872, in the said city of San Diego, in the manner and at the places hereinafter specified, to determine whether or not the said board of trustees and their successors in office shall issue bonds of the said city of San Diego, for the purpose of carrying out the agreement made by the 'Citizens' Committee of Forty' with Col. Thomas A. Scott, the president of the Texas and Pacific Railway Company, not to exceed the amount of one hundred and fifty thousand dollars, in gold coin of the United States of America, said bonds to bear date of the day of issuance, and to be made payable twenty years after date, and to be redeemable at the option of the said board of trustees, or their successors in office, at any time after the expiration of three years from the date of issuance; said bonds to bear interest at the rate of ten per cent. per annum, in like gold coin, semiannually, from the date of issuance, and to be issued in denominations of not less than five hundred nor more than one thousand dollars, at such times and in such manner as said board of trustees may direct. Every qualified voter of the said city of San Diego who desires to vote for the issuance of said bonds shall be entitled so to vote, by placing a ballot in the ballot-box of the city ward in which he is entitled to vote, with the words, 'For the bonds—Yes,' written or printed thereon; and those who desire to vote against the issuance of said bonds shall, in like manner, place a ballot in such ballot-box, with the words, 'For the bonds—No,' written or printed thereon. Said election shall be held on said twenty-seventh day of September, A. D. 1872, between the hours of ten o'clock a. m. and seven o'clock p. m., in the several wards of the said city of San Diego. The polling places and the officers thereof shall be as follows, to wit: * * *.

"Passed at a regular meeting of the board of trustees of the said city of San Diego, this sixteenth day of September, A. D. 1872.

"[Seal.]                           W. J. McCormick, President.

"E. G. Haight, Clerk."

### "Charter Ordinance No. 22.

"Section 1. That the said board of trustees issue bonds of the said city of San Diego, for the purpose of carrying out the agreement made by the Citizens' Committee of Forty with Colonel Thomas A. Scott, the president of the Texas Pacific Railway Company, not to exceed the amount of one hundred and fifty thousand dollars, payable in gold coin of the United States of America.

"Sec. 2. That said bonds be issued and bear date as of the first day of January, A. D. 1873, and be made payable at the office of the city treasurer of said city, in twenty years from and after said date, and to be redeemable at the option of the said board of trustees or their successors in office, at any time after the expiration of three years from said date of issuance.

"Sec. 3. That said bonds bear interest at the rate of ten per cent. per annum from the date of issuance, payable in like gold coin semi-annually, on the first day of July and January in each year, at the office of the treasurer of said city.

"Sec. 4. That said bonds be issued (at the option of said board of trustees) in denominations of not less than five hundred nor more than one thousand dollars, and to such person or persons, and at such time or times, as said board of trustees may, by resolution, direct."

By Ordinance No. 7, it will be observed, the proposition the qualified voters of the city of San Diego were called upon to determine by their votes was whether or not the board of trustees and their successors in office should issue bonds of the city for the purpose of carrying out the agreement made by the Citizens' Committee of Forty with Col. Thomas A. Scott, not to exceed in amount $150,000, "said bonds to bear date of the day of issuance, and to be made payable twenty years after date, and to be redeemable at the option of the said board of trustees, or their successors in office, at any time after the expiration of three years from the date of issuance."

Section 1 of Ordinance No. 22 provided that the board of trustees of the city issue bonds for the purpose of carrying out the agreement made by the Citizens' Committee of Forty with Col. Thomas A. Scott, not to exceed in amount $150,000; and section 2 of that ordinance provided:

"That said bonds be issued and bear date as of the first day of January, A. D. 1873, and be made payable at the office of the city treasurer of said city, in twenty years from and after said date, and to be redeemable at the option of the said board of trustees or their successors in office, at any time after the expiration of three years from said date of issuance."

Notwithstanding this manifest conflict in the provisions of the two ordinances in respect to the time when the bonds should bear date, and the consequent difference in respect to the time within which they should be redeemed, the act of the legislature of California of February 24, 1874 (St. 1873–74, p. 155), undertook to legalize, ratify, confirm, and declare valid all of the provisions of each of those ordinances. In other respects, however, there was no conflict between the two ordinances regarding the mode and manner of issuance of the bonds. Ordinance No. 7, providing for the election to determine whether bonds should be issued or not, declared they should bear interest at the rate of 10 per cent. per annum, in gold coin, from the date of issuance, "and to be issued in denominations of not less than five hundred nor more than one thousand dollars, at such times and in such manner as said board of trustees may direct." And Ordinance No. 22, providing for the issuance of the bonds, provided that they should bear interest at the rate of 10 per cent. per annum from the date of issuance, and "that said bonds be issued (at the option of said board of trustees) in denominations of not less than five hundred nor more than one thousand dollars, and to such person or persons, and at such time or times, as said board of trustees may, by resolution, direct."

Inasmuch as, under the authorities to which reference has been made, none of the bonds or coupons in suit were authorized by the charter of the city of date March 7, 1872, whatever authority, if any, the board of trustees of the city of San Diego had in the premises was derived under and by virtue of the act of Feb-

ruary 24, 1874, confirming the provisions of Ordinances 7 and 22, thereby making those provisions of the ordinances a part and parcel of the statute, and thus constituting the prescribed mode the measure of the power. This was clearly the view taken by the supreme court of California in its decision in the case of McCoy v. Briant, 53 Cal. 249, in respect to the identical bonds now under consideration, where it said that:

"The authority to issue the bonds is derived exclusively from Ordinances numbers 7 and 22 of the trustees of the city, which were subsequently ratified and validated by the act of the legislature of February 24, 1874."

As the court there also said:

"The two ordinances, as ratified by the act of the legislature, prescribed definitely and precisely the mode, and the only mode, in which the bonds could be issued and delivered, to wit, by a resolution of the board of trustees, directing when and to whom the bonds were to be issued and delivered. Nor can this requirement be regarded as merely directory, a violation of which would not impair the validity of the bonds. On the contrary, it was intended as a protection against an abuse of its power by the board of trustees, and to prevent a fraudulent or unauthorized delivery by the clerk to a person not entitled to receive the bonds. Under the terms of the ordinance, no bond could be issued or delivered, except upon a resolution of the board appearing upon its minutes or the record of its proceedings, thus furnishing a most important safeguard against fraud and an abuse of power. Every person dealing in bonds is bound, at his peril, to inquire whether they were issued in the mode prescribed; and, as the mode is the measure of the power," the court declared the bonds would be void in the hands of a holder for value without actual notice, if issued in any other mode.

The court there cited, in support of its conclusion, a number of authorities, among them Dill. Mun. Corp. §§ 372, 373, where it is declared to be a general and fundamental principle of law that all persons contracting with a municipal corporation must, at their peril, inquire into the power of the corporation or its officers to make the contract, and that, where the mode of contracting is specially and plainly prescribed and limited, that mode is exclusive, and must be pursued, or the contract will not bind the corporation.

Giving to the act of the legislature of February 24, 1874, the force and effect claimed for it on the part of the plaintiff, it gave to the provisions of Ordinances Nos. 7 and 22 the force and effect of statute law. The mode and manner of issuing the bonds being thus plainly prescribed by force of the statute, it is clear that no subsequent action of the board of trustees could change it, by confirmatory resolution or otherwise.

For the reasons stated, the court instructs you, as matter of law, that all of the bonds and coupons sued upon are void in the hands of the plaintiff, and you are therefore instructed to return a verdict for the defendant.

Verdict for defendant.