GERMAN INS. CO. v. CITY OF MANNING.

(Circuit Court, S. D. Iowa, C. D. February 16, 1897.)

1. MUNICIPAL BONDS—SIGNATURES—AUTHORITY TO SIGN

In the absence of any mandatory requirement, by statute or otherwise, as to the manner in which bonds issued by a city shall be signed, such bonds may be signed by any officers of the city whom its governing board designates therefor; and upon demurrer to a complaint setting up bonds which recite that the city has caused the bonds to be signed by certain officers, who have in fact signed them, the city cannot urge that they are not its bonds because signed by such officers without its authority.

2. SAME—NEGOTIABILITY.

Under section 500 of the Code of Iowa, providing that loans may be negotiated by any municipal corporation in anticipation of the revenues thereof, as construed by the supreme court of the state, bonds issued by a municipal corporation pursuant to said statute may be negotiable in form. City of Brenham v. German-American Bank, 12 Sup. Ct. 559, 144 U. S. 173, and Merrill v. Town of Monticello, 11 Sup. Ct. 441, 138 U. S. 673, distinguished.

The petition herein avers, as cause of action: That on October 23, 1884, the defendant, a municipal corporation organized under the laws of the state of Iowa, and under the statutes of that state known as a city of the second class, issued its five certain bonds of $1,000 each, a copy of one of said bonds being as follows:

"United States of America.

"Number 1.                                                                    $1.000.00

"State of Iowa.                                          City of Manning, Iowa.

"The city of Manning, in the county of Carroll, and state of Iowa, for value received, promises to pay Freeport Machine Co., of Freeport. Ills., or order, at the Farmers' and Traders' Bank, Manning, Iowa, on the 14th day of October, 1894, the sum of one thousand dollars, with interest at the rate of 8 per cent. per annum, payable at Manning, Iowa, semiannually on the 14th day of April and Oct. 14th in each year, on presentation and surrender of the interest coupons hereto attached. This bond is issued by the city of Manning, Iowa, under the provisions of section 500, chapter 10, of title 4, of the Code of 1873 of Iowa, and in conformity with a resolution of the council of said city of Manning, Iowa,

adopted at a regular session of said council on the 14th day of Oct., 1884. In testimony whereof, the said city of Manning, Iowa, has caused this bond to be signed by the treasurer and countersigned by the mayor of said city of Manning, Iowa, this 23rd day of Oct., 1884.
D. W. Sutherland,
"Treasurer of the City of Manning, Iowa.

"J. W. Martin,
"Mayor of the City of Manning, Iowa."

Indorsed on back:

"Without recourse.
"Freeport Machine Co.
"W. S. Lamb, Treasr."

The other four of said bonds are same as that copied, except as to the number of said bond stated thereon. That plaintiff—a citizen of the state of Illinois—is, by due indorsement, the owner and holder of all five of said bonds, and a bona fide purchaser thereof before maturity. That said bonds are, with interest thereon from October 14, 1894, due and unpaid. Plaintiff asks judgment accordingly. Defendant demurs.

The grounds may be stated in two points, viz.: That the bonds in suit are invalid and void, because (1) no authority existed in the defendant city to issue the bonds in suit, and (2) such bonds, as set out in petition, were issued by the treasurer and mayor of defendant, and not under authority of or by defendant. The present hearing is on this demurrer.

Berryhill & Henry, for plaintiff.
B. I. Salinger and Cummins, Hewitt & Wright, for defendant.

WOOLSON, District Judge. Counsel have not pointed the court to any mandatory requirement of statute or otherwise with reference to the manner in which bonds issued by an Iowa city shall be signed. In the absence of such mandatory requirement, it would seem that the bonds of a city might be signed by any of the officers of the city whom the city council, as the governing board of the city, should designate therefor. The bonds in suit, as issued by said defendant, recite that "the said city of Manning, Iowa, has caused this bond to be signed by the treasurer and countersigned by the mayor of said city of Manning," etc. Upon demurrer to said petition, the defendant city may not—in the face of this recital—successfully urge that the bonds are not the bonds of said city, because signed without its authority therefor by the treasurer and mayor. The recitals in the bonds must be held, certainly when attacked by demurrer, to speak the truth. and, as thus spoken, the truth overthrows the second point of demurrer.

Section 500, c. 10, tit. 4, Code Iowa 1873, is as follows:

"500. Loans may be negotiated by any municipal corporation in anticipation of the revenues thereof, but the aggregate amounts of such loans shall not exceed the sum of three per cent. upon the taxable property of any city or town."

By amendatory legislation this section was somewhat changed as to the amount of loans permitted. such aggregate varying according to population; but these amendments are immaterial as to the point to be

now considered. The contention of defendant is that the section just quoted does not authorize the city to evidence by negotiable bonds a loan made "in anticipation of revenue," and that the bonds in suit, being negotiable bonds, and issued, as in said bonds recited, under the section which authorizes loans to be negotiated only "in anticipation of revenue," were issued by the city without authority therefor, and are invalid and void in the hands of a bona fide holder. Plaintiff does not contest the proposition that, if the bonds were by the city issued without authority of law therefor, they are invalid in the hands of a bona fide holder. But plaintiff maintains the right of the city to issue, under said section 500, the negotiable bonds in suit. The question whose decision determines the present hearing is whether said section 500 authorizes a municipal corporation to issue, in anticipation of its revenues, negotiable bonds of the character of those in suit. There exists no disagreement of counsel herein as to the general rules to be followed in ascertaining the powers granted by the act of incorporation of a city. As was said by Chief Justice Marshall in Head v. Insurance Co., 2 Cranch, 169, when speaking of bodies having only a legal existence:

"The act of incorporation is to them an enabling act. It gives them all the power they possess. It enables them to contract; and when it prescribes to them a mode of contracting they must observe that mode, or the instrument no more creates a contract than if the body had never been incorporated."

In his valuable treatise on the Law of Municipal Corporations (4th Ed., § 89), Judge Dillon, treating of the powers of municipal corporations, says:

"It is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers, and no others: First, those granted in express words; second, those necessarily or fairly implied in, or incident to, the powers expressly granted; third, those essential to the declared objects and purposes of the corporation,—not simply convenient, but indispensable. Any fair, reasonable doubt concerning the existence of the power is resolved by the courts against the corporation, and the power is denied. Of every municipal corporation, the charter or statute by which it is created is its organic act. Neither the corporation nor its officers can do any act, make any contract, incur any liabilities, not authorized thereby, or by some legislative act applicable thereto. All acts beyond the scope of the powers granted are void."

In Minturn v. La Rue, 23 How. 435, 436, the supreme court of the United States, speaking through Mr. Justice Nelson, declare:

"It is a well-settled rule of construction of grants by the legislature to corporations, whether public or private, that only such powers and rights can be exercised under them as are clearly comprehended within the words of the act, or derived therefrom by necessary implication, regard being had to the objects of the grant. Any ambiguity or doubt arising out of the terms used by the legislature must be resolved in favor of the public."

See, also, Barnett v. Denison, 145 U. S. 135, 141, 12 Sup. Ct. 819. The same rule of construction is followed by the supreme court of Iowa in Henke v. McCord, 55 Iowa, 381, 7 N. W. 623; Becker v. Waterworks, 79 Iowa, 419, 44 N. W. 694. The decisions of the supreme court of the United States, as applied to statutes somewhat similar in terms to the Iowa statute above copied, do not present entirely harmonious constructions. A brief reference to some of these deci-

sions may be necessary to a decision herein.     Rogers v. City of Burlington, 3 Wall. 654, was decided in 1865.     That court had theretofore been required to determine various questions relating to bonds issued by Iowa municipal corporations.     Gelpcke v. City of Dubuque, 1 Wall. 175; Meyer v. City of Muscatine, Id. 384.     The Muscatine Case upheld the validity of bonds issued by that city, under power, in its charter, "to borrow money," etc.     The Burlington Case, supra, involved (1) whether the power conferred on the city "to borrow money for any public purpose" gave authority to borrow money to aid a railway company. and (2) whether such power to "borrow money" gave the municipality the authority to guaranty payment of 20-year negotiable bonds issued by the company.     The court (five to four) decided both these points in the affirmative.     The decision of the latter point of necessity compelled the court to consider and affirmatively decide that authority to issue negotiable bonds was granted by the charter power to "borrow money."     Mitchell v. City of Burlington, 4 Wall. 270, involved the same general questions of the power of the city, except that the bonds in question were bonds of the city, signed by its mayor and recorder, and recited they were issued "to provide for procuring and investing the loan of $10,-000 to the city, to be invested in the stock of the   *   *   *   Plank-Road Co., and for other purposes."     The answer of the city set up as one of its defenses "that the officers of the city had no authority to issue the bonds, and that the bonds, as against the defendant city, were void."     To this part of the answer plaintiff demurred. The trial court sustained the demurrer.     The opinion of the court (page 273) declares that the pleadings raise the question of the validity of the bonds.     The court announce that they are satisfied with the decision reached by the court at the previous term, when the present defendants presented the same question, and the court held "that the power to borrow money for any public purpose, within the meaning of the provision, was conferred by the charter in express terms, and that there was nothing in the constitution of the state which limited the authority so conferred, or rendered it invalid." In the extract just quoted reference is made to Rogers v. City of Burlington, supra, and to the charter power of the city to "borrow money for any public purpose."     On page 274 the court expressly declare that "the bonds of the corporation, given as the means of raising the money, are within the power conferred by the provision"; i. e. "to borrow money," etc.     Larned v. City of Burlington, 4 Wall. 275, is along the same lines of decision.     It is not necessary here to trace the decisions of the supreme court subsequent to these Burlington Cases, decided in 1865 and 1866, and prior to City of Brenham v. German-American Bank (decided in 1892) 144 U. S. 173, 12 Sup. Ct. 559.     The intermediate cases are referred to and considered in the Brenham opinion and in the dissenting opinion therein filed.     On page 187, 144 U. S., and page 564, 12 Sup. Ct., the court declare, after distinguishing and considering such cases:

"We therefore must regard the cases of Rogers v. City of Burlington and Mitchell v. City of Burlington as overruled in the particular referred to by later cases in this court."

The act incorporating the city of Brenham provided:

"Sec. 2. The city council shall have power and authority to borrow for general purposes not exceeding fifteen thousand dollars on the credit of the city."

The opinion states (page 179, 144 U. S., and page 561, 12 Sup. Ct.) that:

"The court charged the jury 'that the power in the city to borrow money carried with it the authority to issue the bonds, and that the defendant had capacity to issue the bonds in question as commercial paper, and bind itself to pay them and the coupons. * * *' The principal contention on the part of the defendant is that it was without authority to issue the bonds, and that they were void for all purposes, and in the hands of all persons."

On page 181, 144 U. S., and page 562, 12 Sup. Ct., the court state:

"That in exercising its power under its charter to borrow not exceeding fifteen thousand dollars on its credit, for general purposes, the city could give to the lender, as a voucher for the repayment of the money, evidence of indebtedness in the shape of nonnegotiable paper, is quite clear; but that does not cover the right to issue negotiable paper or bonds, unimpeachable in the hands of a bona fide holder. * * * The power to borrow the eleven thousand dollars would not have been nugatory, unaccompanied by the power to issue negotiable bonds therefor. * * * The confining of the power in the present instance to a borrowing of money for general purposes on the credit of the city limits it to the power to borrow money for ordinary governmental purposes, such as are generally carried out with revenues derived from taxation; and the presumption is that the grant of the power was intended to confer the right to borrow money in anticipation of the receipt of the revenue taxes, and not to plunge the municipal corporation into a debt on which interest must be paid at the rate of ten per centum per annum semiannually for at least ten years. It is easy for the legislature to confer upon a municipality, when it is constitutional to do so, the power to issue negotiable bonds; and under the well-settled rule that any doubt as to the existence of such power ought to be determined against its existence it ought not to be held to exist in the present case."

The court conclude (page 188, 144 U. S., and page 565, 12 Sup. Ct.), "as there was no authority to issue bonds, even a bona fide holder of them cannot have a right to recover upon them or their coupons" (the action was brought by a bona fide holder to recover on said bonds), and the cause is sent back to the trial court with directions to dismiss the case, and render general judgment for the defendant city.

As in part illustrating the force and extent of the decision in the Brenham Case, we may quote a portion of the opinion in Merrill v. Town of Monticello, 138 U. S. 673, 691, 11 Sup. Ct. 441, which is approvingly quoted by Justice Blatchford in the Brenham opinion (page 187, 144 U. S., and page 564, 12 Sup. Ct.):

"It is admitted that the power to borrow money or to incur indebtedness carries with it the power to issue the usual evidences of indebtedness by the corporation to the lender or creditor. Such evidences may be in the form of promissory notes, warrants, and, perhaps, most generally in that of a bond. But there is a marked legal difference between the power to give a note to the lender for the amount of money borrowed or to a creditor for the amount due, and the power to issue for sale, in open market, a bond, as a commercial security, with immunity, in the hands of a bona fide holder for value, from equitable defenses. * * * It does not follow that, because the town of Monticello had the right to contract a loan, it had, therefore, the right to issue negotiable bonds, and put them on the market as evidences of such loan. To borrow money, and to give a bond or obligation therefor which may circulate in the market as a negotiable security, freed from any equities that may be set up by the maker of it, are, in their nature and legal effect, essentially different transactions. In the present case, all that can be contended for is that the town had the power to contract a loan, under certain

specified restrictions and limitations. Nowhere in the statute, is there any express power given to issue negotiable bonds as evidence of such loan. Nor can such power be implied, because the existence of it is not necessary to carry out any of the purposes of the municipality."

To the decision announced in the Brenham Case, Justices Harlan, Brewer, and Brown enter a most vigorous dissent. That the decision must have been the result of specially earnest discussion at the consultation table, and after clear consideration of its far-reaching effect, is evident from the dissenting opinion (page 196, 144 U. S., and page 568, 12 Sup. Ct.):

"It seems to us that the court in the present case announces for the first time that an express power in a municipal corporation to borrow money for corporate or general purposes does not, under any circumstances, carry with it by implication authority to execute a negotiable promissory note or bond for the money so borrowed, and that any such note or bond is void in the hands of a bona fide holder for value. * * * But if it [authority to borrow money] may not be exercised by giving negotiable notes or bonds as evidences of the indebtedness so created,—which is the mode usually adopted in such cases,—the power to borrow, however urgent the necessity, will be of little practicable value. Those who have money will not lend it upon mere vouchers or certificates of indebtedness. The aggregate amount of negotiable notes and bonds executed by municipal corporations for legitimate purposes, under express power to borrow money simply, and now outstanding in every part of the country, must be enormous. A declaration by this court that such bonds and notes are void because of the absence of express legislative authority to execute negotiable instruments for the money borrowed, will, we fear, produce incalculable mischief."

The decision announced in the Brenham Case, though rendered by a divided court, appears to be accepted by that court as finally settling the point so decided. Thus, in Board v. De Kay, 148 U. S. 591, 601, 13 Sup. Ct. 706, the court, speaking through Mr. Justice Brewer, —who was one of the dissenting justices in the Brenham Case,—say, in a unanimous opinion: "While it is true that the power to borrow money granted to a municipal corporation does not carry with it by implication the power to issue negotiable bonds (City of Brenham v. German-American Bank, 144 U. S. 173, 12 Sup. Ct. 559)," etc.

The Brenham Case has also been recognized and followed on the point above mentioned by circuit courts and circuit courts of appeals in the various circuits. Lehman v. City of San Diego (S. D. Cal.) 73 Fed. 105; Rathbone v. Board (D. Kan.) Id. 395, 399; City of Cadillac v. Woonsocket Inst. for Savings (Sixth Circuit) 7 C. C. A. 574, 58 Fed. 935, 938; and also Ashley v. Board, 8 C. C. A. 455, 60 Fed. 55, 67; City of Evansville v. Woodbury (Seventh Circuit) 9 C. C. A. 244, 60 Fed. 718, 720; Coffin v. Board (Eighth Circuit) 6 C. C. A. 288, 57 Fed. 137, 141; and Ashuelot Nat. Bank v. School Dist. No. 7, Valley Co., 5 C. C. A. 468, 56 Fed. 197, 199. In the Case of the Ashuelot Bank, just cited, the circuit court of appeals, speaking through Circuit Judge Thayer, quote from the dissenting opinion in the Brenham Case that portion which we have hereinbefore quoted and set out, and remark:

"It is unnecessary for us to assert that the decision last referred to [Brenham Case] goes to the full extent, last indicated [in extract from dissenting opinion], of holding that a municipal corporation can only acquire authority to issue negotiable securities by a statute which confers such power in express language, and that the power will not be implied under any circumstances. We think,

however, that we may fairly affirm that the two authorities heretofore cited—Merrill v. Town of Monticello and City of Brenham v. German-American Bank—do .establish the following propositions: First, that an express power conferred upon a municipal corporation to borrow money for corporate purposes does not in itself carry with it an authority to issue negotiable securities; second, that the latter power will never be implied in favor of a municipal corporation, unless such implication is necessary to prevent some express corporate power from becoming utterly nugatory; and, third, that in every case where a doubt arises as to the right of a municipal corporation to execute negotiable securities, the doubt should be resolved against the existence of any such right."

Counsel have pointed us to no provision in the constitution or statutes of Iowa which expressly confers on a municipal corporation in the state the authority to issue negotiable securities, where a loan is negotiated in anticipation of revenues. If, then, the decisions—hereinbefore referred to—of the supreme court of the United States and of the circuit court of appeals for this circuit are to control the judgment of this court in deciding whether the bonds in suit are valid, judgment must be rendered against their validity. In that event we might adopt the language of the court in the Ashuelot Bank Case, supra (page 200, 56 Fed., and page 471, 5 C. C. A.), and say:

"We are therefore constrained to hold that the bonds sued on were issued without authority by law, and that no holder thereof could acquire the rights of an innocent purchaser of commercial paper."

Plaintiff, however, insists that the later case of City of Evansville v. Dennett (decided March 3, 1896) 161 U. S. 434, 16 Sup. Ct. 613, as applied to the facts averred in petition in case at bar, compels the overruling of defendant's demurrer. To reconcile the opinion in the Evansville Case with those delivered in the Monticello and Brenham Cases is not an easy task. Some portions of the latter case appear to be irreconcilable with the earlier cases referred to. It is probable, however, that this largely arises from the peculiar manner in which the Evansville Case was brought before the court. They received it upon certificate from the judges of the circuit court of appeals, accompanied with certain specific questions, to which answers were desired. The supreme court were, in their consideration of the case, largely limited to the scope of these questions, which related to the law of estoppel as applied to recitals in the bonds. None of the questions in express terms bring before the court for their decision the authority of the city to issue the bonds in suit. And yet this point appears involved therein. Justice Harlan delivers the opinion, to which no dissent appears. By act of legislature the city of Evansville was, in its charter, expressly authorized "to take stock in any chartered company for making roads to said city"; and "the city council shall have power to borrow money and levy and collect taxes  *  *  *  for the payment of said stock." The city issued $300,000 of negotiable bonds in payment of that amount of stock to railroads. Having decided that stock of a railroad leading to that city came within the terms of the charter, the court inquire (page 441, 161 U. S., and page 616, 16 Sup. Ct.):

"Was a bona fide purchaser of the bonds issued in payment of a subscription to stock—the power to subscribe being clearly given—bound to know that the conditions precedent to the exercise of the power were not performed?"

On page 443, 161 U. S., and page 616, 16 Sup. Ct., the court say:

"The charter of the city of Evansville gave authority to subscribe to the stock of these railroad corporations, and, as held by the supreme court of Indiana in Evansville, Indianapolis & Cleveland Straight-Line Railroad Co. v. City of Evansville, 15 Ind. 395, 412, the express power given to borrow money necessarily implied 'the power to determine the time of payment, and also the power to issue bonds or other evidences of indebtedness.' As, therefore, the recitals in the bonds import compliance with the city's charter, etc. * * * With such recitals before them, they had the right to assume that the circumstances existed which authorized the city to exercise the authority given by the legislature."

The court, in announcing the conclusions reached, say (page 446, 161 U. S., and page 618, 16 Sup. Ct.):

"The city having authority, under the circumstances, to put these bonds upon the market, and having issued them under the corporate seal of the city, and under the attestation of its highest officer, certifying that they were made in payment of a subscription of stock made in pursuance of the city's charter, the principles of justice demand that the bonds in the hands of bona fide holders for value should be met according to their terms, unless some clear, well-settled rule of law stands in the way. No such obstacle exists."

Between the Monticello Case (which was also an Indiana case) and the Evansville Case there exists this difference: that in the latter there was given express authority to borrow money for payment of stock, while in the former such authority was implied only. But the doctrine of the Brenham Case, as stated by the circuit court of appeals for this (Eighth) circuit in the Ashuelot Bank Case, supra, places express authority in the municipal charter to borrow money on the same level with implied authority to borrow same. Neither is sufficient in itself to sustain the issuing of negotiable commercial bonds. The further possible difference between the Monticello and Evansville Cases may be stated—though the absence in the Monticello Case of citation of titles of Indiana cases makes the difference less positive—that the former case refuses to recognize as controlling or to follow the Indiana cases, while the latter decision apparently recognizes and is controlled by the same Indiana decisions.

Plaintiff points us to certain Iowa decisions, which it insists must govern the ruling on the present demurrer. The first case in point of time is Austin v. District Tp. (decided in 1879) 51 Iowa, 102, 49 N. W. 1051. This was an action brought on a school order purporting to be given for money furnished in the erection of a schoolhouse. The facts appear to be that the defendant school-district township, having voted to build a schoolhouse, incurred some indebtedness in its building. To discharge the same, defendant borrowed of plaintiff the amount named in the order, and therewith paid the debt. Defendant insisted that the directors of defendant, in thus borrowing the money, acted beyond the scope of their official powers, and the defendant is not bound thereby. The court hold the defendant liable, regarding the transaction the same (page 105, 51 Iowa, and page 1052, 49 N. W.) as though the order had been delivered directly to the creditor of the district in payment of his debt, and he had then sold the order to plaintiff. "If the defendant in case at bar had given its promissory note or order to the original creditor, we presume its power to do so would not have been questioned." This case apparently decides nothing further than was decided in the

Monticello and Brenham Cases, so far as concerns the pending case, —that a corporation may execute valid evidences of indebtedness for valid debts; but it is far from holding that it may, without express authority therefor, issue negotiable commercial bonds, running for a long period of years, etc. It may, however, be regarded as leading up to the next case,—Sioux City v. Weare (decided in 1882) 59 Iowa, 95, 12 N. W. 786. This is the only case in the Iowa Reports, so far as counsel have indicated or I have found, wherein is construed section 500,—the section of the Iowa Code under which the bonds in suit were issued. The facts, as stated in the opinion, were that one Greene had recovered a judgment against the city for personal injuries caused by dirt placed in the streets by defendant. The city paid the Greene judgment in negotiable bonds. Having duly notified defendant of pendency, etc., of the Greene action, the city now sued Weare, to recover from him the amount it had been compelled to pay Greene. Weare, as part defense, avers "the bonds were issued without authority of law, and were void, and constituted no payment of the judgment." The court say (page 98, 59 Iowa, and page 787, 12 N. W.):

"But the defendants rely in part upon a provision of the statute. They say that municipal corporations are authorized to issue bonds only as evidence of a loan of money, and that, if we are to treat the transaction as a loan of money, it cannot be upheld, provided the indebtedness of the city at the time exceeded five per cent. of the value of the taxable property, as the amendment avers it did. The provision of the statute relied upon is section 500 of the Code, and is in these words: 'Loans may be negotiated by any municipal corporation in anticipation of the revenues thereof, but the aggregate amounts of such loans shall not exceed the sum of five per cent. of the taxable property.' The transaction in question, while not strictly a loan, comes, we think, within the spirit of the provision authorizing loans. * * * We are unwilling, therefore, to give the statute such a strict construction as to deprive municipal corporations of the exercise of the right in question, which, it appears to us, must often be a valuable one. Now, where a municipal corporation borrows money on time, or does an equivalent act, as, in this case, negotiates for time in the payment of indebtedness, it may doubtless give its written obligation, and there can, we think, be no objection to the obligation being in the form of bonds. Rogers v. City of Burlington, 3 Wall. 654. Possibly the statutory limitation would render the bonds invalid if given in excess of the limitation, and that, too, if given for the extinguishment of an antecedent and valid indebtedness; but that point we do not determine."

The bonds in controversy herein were "six per cent. negotiable bonds." Page 97, 59 Iowa, and page 786, 12 N. W. "The bonds were made negotiable." Page 99, 59 Iowa, and page 788, 12 N. W. Their validity was upheld by this decision, in which all the judges concur. The bonds in suit in case at bar were issued in October, 1884. The Sioux City-Weare Case was decided in June, 1882. The Brenham Case, supra, was decided by the supreme court of the United States in 1892. To what test are plaintiff's rights in case at bar to be subjected? Had no construction been placed upon the Iowa statute by the highest court of that state, there must, under the circumstances, have been a decision against plaintiff; for the Evansville-Dennett Case, supra, is based on the construction given by the Indiana supreme court to the statute of that state. Here is involved the force and effect of an Iowa statute, under the construction given to it by the supreme court of this state.

So far as contract rights are concerned which accrue under a statute, such statute is to be construed in the light of the judicial construction of such statute which obtained when the contract was entered into. Such construction becomes part of the statute, and is to be read into it as though written therein, when those contract rights are under consideration. Douglass v. Pike Co., 101 U. S. 677, 689; Anderson v. Santa Anna Tp., 116 U. S. 356, 362, 6 Sup. Ct. 413; German Sav. Bank v. Franklin Co., 128 U. S. 538, 9 Sup. Ct. 159. The construction announced in Sioux City v. Weare, supra, validates negotiable bonds when issued as "loans negotiated by a municipal corporation in anticipation of the revenues thereof." This decision appears to have remained undisturbed. Through a period of 14 years has session after session of that court been held, and no change in that construction has been given; nor through session after session of the general assembly has the lawmaking power of the state sought to change the statute as thus construed by the supreme court. Although rendered some years subsequent to the Burlington Cases, supra, in 3 and 4 Wall., the construction in the Sioux City Case is in complete harmony with the views of the supreme court of the United States as declared in those Burlington Cases. When the Sioux City-Weare Case was decided, the Burlington Cases had not yet been formally overruled by the supreme court of the United States. And, as will have been noticed, Rogers v. City of Burlington, supra, is cited in the Sioux City-Weare Case as an authority for the decision there made. That the Rogers Case has, in the Brenham Case, supra, been formally declared to be overruled does not work the overruling of the Sioux City decision. As a matter of law, applied, not to statutes, but to the broad field of commercial law, this court would be bound by the latest decision of the supreme court of the nation concerning the right of a municipal corporation to issue negotiable commercial securities, without express legislative authority therefor. But this court is bound to follow the highest court of the state in whatever settled construction it shall give to a statute. "As a rule, we treat the construction which the highest court of a state has given the statute of a state as part of the statute, and govern ourselves accordingly," say the court in Douglass v. Pike Co., 101 U. S. 677, 687. But the decision further declares a different rule may apply where the state court has given varying decisions as to such statute. "This court must recognize this decision of the supreme court of the state as an authoritative construction of the statute, made before the bonds were issued, and to be followed by this court. Douglass v. Pike Co., supra; Green Co. v. Conness, 109 U. S. 104, 3 Sup. Ct. 69; Burgess v. Seligman, 107 U. S. 20, 2 Sup. Ct. 10; German Sav. Bank v. Franklin Co., 128 U. S. 526, 538, 9 Sup. Ct. 159." Commencing with its early expressions by Chief Justice Marshall in 2 Cranch, and continuing with frequent restatements thereof to its latest session, the reported decisions of the supreme court affirm the rule that in all cases depending upon a state statute the federal courts will adopt and follow the adjudications of the court of last resort in the state in its construction, when that construction is well settled. In a note attached to Burgess v. Seligman, 107 U. S. 20, 34, 2 Sup. Ct. 10, are cited a large number of cases wherein this rule is considered.

Although this Sioux City-Weare Case, supra, is the only decision of the Iowa supreme court construing section 500 of the Code in the matters here in question, yet that decision has never been in any way questioned in that court, and is the settled law of Iowa in that regard. Thus it is like the Indiana decision cited and followed in the Evansville-Dennett Case, supra. The decisions in the Monticello and Brenham Cases, supra, on which defendant relies in support of his demurrer, are not applicable. While those cases establish the binding rule for original construction, the rights of plaintiff, as the holder of the bonds in suit, accrued under the previous interpretation of the Iowa supreme court, and must be preserved herein as to the bonds in suit. The petition alleges that the interest coupons of all of these bonds in suit up to and including the 14th day of October, 1894, have been paid. Thus defendant for 10 years, and up to maturity of the bonds, has semiannually paid interest falling due on these bonds, without any objection being urged, so far as now appears, to the validity of the bonds, thereby, with whatever force it may be entitled, admitting their validity. In the words of Mr. Justice Matthews (City of Savannah v. Kelly, 108 U. S. 184, 191, 2 Sup. Ct. 468), "after the lapse of thirteen years, it would be contrary to good faith and common justice to permit defendant to allege a newly-discovered construction of an equivocal power." The language of Mr. Justice Harlan in concluding the unanimous opinion of the court in City of Evansville v. Dennett, 161 U. S. 446, 16 Sup. Ct. 618, when so changed as to adapt itself to the bonds in suit, may fitly close this decision, already extended at too great length:

"The conclusion we have reached on legal grounds * * * is the more satisfactory, because of the long time which elapsed before any question was raised by the city as to the validity of the bonds. The city having authority, under the circumstances, to put these bonds upon the market, and having issued them under the corporate seal of the city, and under the attestation of its highest officer, certifying that they were issued under section 500 of the Code, viz. for a loan negotiated in anticipation of its revenues, the principles of justice demand that the bonds, in the hands of bona fide holders for value, should be met according to their terms, unless some clear, well-settled rule of law stands in the way. No such obstacle exists."

Let defendant's demurrer be overruled, and defendant be ordered to further plead herein by April 1, 1897; to all of which defendant excepts.