CITY OF SIOUX CITY v. WEARE ET AL.

1. **Municipal Corporations**: POWER TO ISSUE BONDS IN SATISFACTION OF JUDGMENT. Where one G., had obtained judgment against the plaintiff, a municipal corporation, *held, arguendo,* that the plaintiff had power, under section 500 of the Code, to issue its bonds to G., for the amount of the judgment—that this was equivalent to issuing its bonds to borrow money to pay the judgment creditor.

2. **Practice**: MUNICIPAL BONDS: VALIDITY OF NOT TRIABLE IN COLLATERAL PROCEEDING. Where defendants had obstructed plaintiff's street, whereby G. was injured, and plaintiff sued defendant to recover the amount of a judgment which G. had procured against plaintiff on account of such injury, which judgment plaintiff had satisfied by issuing to G. its negotiable bonds for the amount of the judgment, and defendants, for an amendment to their answer, set up that the bonds constituted no satisfaction or payment of the judgment, because they were invalid for want of authority in plaintiff to issue them, *held* that the amendment was properly stricken out on plaintiff's motion, because the validity of the bonds could not thus be tried in a collateral proceeding.

3. **Municipal Corporations**: VALIDITY OF BONDS ON THEIR FACE NEGOTIABLE: ISSUED IN SATISFACTION OF JUDGMENT. Where a municipal corporation has power to bind itself by a written obligation, even if it be conceded that it has not the power to make the same negotiable, and it executes its written obligation making the same negotiable *in form*, it would not be void; it would result only that the instrument would not *in fact* be negotiable; and, in this case, where bonds were so issued in satisfaction of a judgment, *held* a sufficient payment of the judgment to support an action against the defendants, on account of whose wrong the judgment had been obtained.

4. ————: CONTRACT OF CHAIRMAN OF STREET COMMITTEE: CITY NOT BOUND BY. A contract made by the the chairman of a street committee is not the act of the committee and does not bind the city whose council appointed the committee. The general rule is that, where power is entrusted to two or more persons, without an express provision that either one alone may exercise it, it can be exercised only by the concurrent act of at least a majority.

5. ——: ——: RATIFICATION BY STREET COMMISSIONER. The street commissioner, unless he had authority to bind the city by a contract made by him originally, had no power to bind the city by ratification of a contract made by the chairman of the street committee.

6. ——: ——: RATIFICATION BY CITY COUNCIL: PRACTICE IN SUPREME COURT. Where there was no evidence tending to show a ratification of the agreement made by the chairman of the street committee, this court will not consider an objection that the question of ratification was not properly submitted. To constitute such ratification, there should have been, at least, the expressed assent of the majority of the city council; but there appears to be no evidence of such assent.

7. ——: LIABILITY OF PARTY OBSTRUCTING STREET: CONTRIBUTORY NEGLIGENCE OF CITY. Where a person places an obstruction in the street of a city, he is not in a condition to demand of the city that it shall remove the obstruction at its own expense, if it has knowledge of it, and in case of failure to remove it after such knowledge, that it shall be precluded from looking to him for indemnification, if it is adjudged to pay, and does pay, damages for an injury caused by the obstruction.

*Appeal from Woodbury District Court.*

FRIDAY, JUNE 16.

ACTION to recover the amount of a judgment obtained against the plaintiff city by one Green, for a personal injury caused by an obstruction of a street by dirt placed in the street by the defendants. The plaintiff avers that the defendants were notified of the action in which the judgment was obtained; that the plaintiff has paid the judgment, and that the defendants have become liable to reimburse the plaintiff for the amount thereof. The defendants deny the payment, and aver that the plaintiff entered into an agreement with the defendants whereby it undertook to remove the dirt for its own use in repairing streets, and whereby it relieved the defendants from all further care or labor in regard to the same.

There was a trial to a jury, and verdict and judgment were rendered for the plaintiff. The defendants appeal.

*Chase & Taylor* and *O. C. Tredway*, for appellants.

*Joy & Wright* and *J. M. Cleland*, for appellee.

ADAMS, J.—I. The plaintiff introduced evidence showing that it issued to Green its six per cent negotiable bonds, which were received by him in payment and satisfaction of the judgment. After the introduction of such evidence, and on the second day of the trial, the defendants filed an amendment to their answer in which they averred that the bonds were issued without authority of law, and were void and constituted no payment of the judgment. They averred that, at the time of the issuance of the bonds, the plaintiff city had already issued its bonds in anticipation of its revenues in excess of five per cent of the taxable property of the city. The plaintiff moved to strike out the amendment to the answer, and the court sustained the motion, on condition, however, that the amendment might remain on file if the defendants would pay the costs of the suit to that date, and $25.00 as terms. The defendants refused to submit to the terms, and the amendment to the answer was stricken out. The defendants assign as error the ruling upon the motion.

Whether, if the amendment had averred anything which the defendants were entitled to prove, the court would have been justified in imposing the terms which it did as a condition of allowing the amendment to remain on file, we need not determine. We do not think that the validity of the bonds could be assailed upon the ground therein alleged.

The averments contained in the amendment appear to have been made in part with reference to the constitutional restriction upon municipal indebtedness, limiting it to five per cent of the value of the taxable property. But the constitutional restriction does not appear to us to have any application. It may be greatly doubted whether the validity of the bonds could be properly assailed by reason of the constitutional restriction, even if the plaintiff's indebtednesss exceeded the constitutional limitation at the time the judgment was rendered. It is very clear that if it did not, and there is no infirmity in the judgment for that reason, the

bonds issued in payment of it are not invalid merely by reason of the constitutional restriction, and the fact that the limitation had been exceeded, as the amendment avers, at the time they were issued. Their issuance did not increase the plaintiff's indebtedness.

But the defendants rely in part upon a provision of statute. They say that municipal corporations are authorized to issue bonds only as evidence of a loan of money, and that if we are to treat the transaction as a loan of money it cannot be upheld provided the indebtedness of the city at the time exceeded five per cent of the value of the taxable property, as the amendment avers it did.

The provision of statute relied upon is section 500 of the Code and is in these words: "Loans may be negotiated by any municipal corporation in anticipation of the revenues thereof, but the aggregate amounts of such loans shall not exceed the sum of five per cent of the taxable property."

The transaction in question, while not strictly a loan, comes, we think, within the spirit of the provision authorizing loans.

1. MUNICIPAL corporations: power to issue bonds in satisfaction of judgment. The issuance of the bonds to the judgment creditor in payment of the judgment imposes upon the city the same obligation that would have been imposed if they had been issued for money borrowed to pay the judgment creditor. So far as the transaction differs from a loan, the difference is not in substance, but in form. We are unwilling, therefore, to give the statute such a strict construction as to deprive municipal corporations of the exercise of the right in question, which it appears to us must often be a valuable one. Now, where a municipal corporation borrows money on time, or does an equivalent act, as in this case, negotiates for time in the payment of indebtedness, it may doubtless give its written obligation, and there can, we think, be no objection to the obligation being given in the form of a bond or bonds. *Rogers v. Burlington*, 3 Wallace, 654.

Possibly the statutory limitation would render the bonds

invalid if given in excess of the limitation, and that, too, if given for the extinguishment of an antecedent and valid indebtedness; but that point we do not determine. The averment of the amendment designed to assail the validity of the bonds was that the "plaintiff had already issued its bonds in anticipation of its revenues largely in excess of five per cent," etc. It is not averred that the bonds which had been issued were still outstanding and constituting a valid obligation against the city. But if this averment had been made it appears to us that it would not have tendered an issue which the court in this action could properly have tried. It is evident that the bonds issued to Green are not invalid for the reason alleged, unless the city could, as against the holder thereof, maintain a successful defense, and a defense could be maintained only in case there were other bonds outstanding in excess of the statutory limitation against which a defense could not be maintained. To hold that the court in this action, with the parties which it had before it, could be properly called on to try such an issue, if it had been tendered, would be going a great way, and would, as it appears to us, contravene well recognized principles. *Hardin v. Branner*, 25 Iowa, 370.

*2. PRACTICE: municipal bonds: validity of not triable in collateral proceeding.*

II. The court in its second instruction charged the jury, in substance, that the payment made by the issuance of the bonds was a sufficient payment. Defendants say that the payment thus made was not in any view sufficient. They say the bonds were void upon their face. The bonds were made *negotiable*, and show upon their face that they were given for indebtedness. The defendants' argument is, as we understand it, that while it may be true that a municipal corporation has, by implication, the power within the statutory limit to issue, for money actually borrowed, bonds which are negotiable, because it is upon such bonds that money can be borrowed at the lowest rates in the money markets of the world,

*3. MUNICIPAL corporation: validity of bonds, on their face negotiable: issued in satisfaction of judgment.*

the corporation has not by implication the power to issue such bonds to be used directly in the payment of indebtedness, because the reason for the issuance of such bonds does not exist. They cite *Clark v. The city of Des Moines*, 19 Iowa, 199, and *Dively v. The city of Cedar Falls*, 21 Id., 565. But the doctrine of those cases does not go to the extent claimed. Where a municipal corporation has the power to bind itself by written obligation, without the power to make the same negotiable, and it executes its written obligation making the same negotiable in form, it would not be void. It would result only that the instrument would not in fact be negotiable, and would lack the characteristics with which actual negotiability would clothe it.

III. The defense upon which the defendants seem to rely with most confidence is the alleged agreement on the part of the plaintiff to remove the dirt for its own use in street repairs, and the alleged release of the defendants from all further care and labor in regard to it. There was evidence tending to show that one Hedges, chairman of the street committee, made such agreement, and that the street commissioner removed a portion of the dirt.

4. ———: contract by chairman of street committee: city not bound by.

The court gave an instruction to the effect that an agreement made by Hedges would not bind the plaintiff unless the same was ratified by the city council. The defendants assign error upon this instruction.

We are not prepared to say that a ratification by the city council was absolutely necessary. Some of the members of the court are inclined to think that the street committee had power, in the discharge of its duties as such committee, to contract for dirt for street repairs as the need of the same might arise from day to day, and without any specific action of the council thereon. But it is not necessary to determine this question, because there is no evidence that the alleged agreement was made by the street committee, unless the action of the chairman could be held to be the action of the

committee, and such, we think, is not the law. The general rule is that where power is entrusted to two or more persons, without an express provision that either one alone may exercise it, it can be exercised only by the concurrent action of at least a majority. *Soens v. The City of Racine*, 10 Wis., 271; *Grindly v. Barker*, 1 Bos. & Pull., 236.

IV. The defendants contend that there was evidence tending to show that the agreement made by Hedges was ratified by the street commissioner and that the instruction was wrong, in that it precluded the jury from finding such ratification.

5. ——: ——: ratification by street commissioner.

While it appears that the street commissioner removed a portion of the dirt, the evidence shows that he did so only at the request of the defendants. Besides we are of the opinion that there was nothing which he could have said or done which would have had the effect to ratify Hedges' agreement unless he had the power to bind the city by a contract made by him originally, and we are unable to discover that he had such power.

V. The defendants complain that the question as to whether the agreement was ratified by the city council was not properly submitted. We do not care to go into a discussion of the alleged erroneous manner of submission. Any error committed in this respect was without prejudice, unless there was some evidence tending to show a ratification. To constitute a ratification of the agreement there should, at least, have been the expressed assent of the majority of the council to the agreement. But we are unable to find any evidence tending to show that such assent was expressed even in the most informal manner.

6. ——: ——: ratification by city council: practice in supreme court.

The mayor, it is true, in being examined as a witness for the defendants, testified that the matter of using the dirt was talked over in the council; and in giving his testimony· he used this expression: "We had concluded to use it because it was more convenient." Now if it should be conceded

that by the word "we" he meant the city council, and intended to be understood as saying in substance that there was an expressed assent of the majority to the use of the dirt, the testimony is insufficient to show an assent to Hedge's agreement. It does not appear indeed that the city council had knowledge of the agreement, or that the agreement had in fact been made at that time. If the council had understood that the defendants were from that time relieved from all responsibility in regard to the dirt it is fair to presume that it would have been more diligent in causing the dirt to be removed, or would have caused guards to be erected and maintained at the city's expense.

VI. The defendants contend that as the city council had full knowledge of the obstruction, it was guilty of contributory negligence, and they asked an instruction upon the theory that the jury would be justified in finding against the plaintiff upon the ground of contributory negligence. The court refused the instruction, and the defendants assign error upon the refusal.

7. ——: liability for obstructing street: contributory negligence of city.

In our opinion the instruction was properly refused. Where a person places an obstruction in a street of a city, he is not in a condition to demand of the city that it shall remove the obstruction at its own expense, if it has knowledge of it, and in case of failure to remove it after such knowledge that it shall be precluded from looking to him for indemnification if it is adjudged to pay, and does pay damages for an injury caused by the obstruction. *Swansey v. Chace*, 16 Gray, 304; *Wobern v. R. R. Co.*, 109, Mass., 285; *Dowell v. R. R. Co.*, 23 Pick., 24.

The views above expressed cover, we think, substantially the errors assigned, and we have to say that we think that the judgment must be

AFFIRMED.