GERMAN INS. CO. OF FREEPORT, ILL., v. CITY OF MANNING, IOWA.

(Circuit Court, S. D. Iowa, C. D. July 25, 1899.)

No. 3,588.

1. MUNICIPAL BONDS—INDEBTEDNESS OF CORPORATION AT TIME OF ISSUANCE VALIDITY OF PRIOR ISSUE.

The test of the validity of municipal bonds, for the purpose of determining whether they are to be included as a part of the outstanding indebtedness of the municipality at the time a subsequent issue was made, is not whether they were recognized as valid by the officers of the corporation, but whether they were legally enforceable; and where the indebtedness of the corporation exceeded the constitutional limit when they were issued, they at no time constituted a legal indebtedness, though they may have been afterwards paid, and while their validity had not been questioned.

2. FEDERAL COURTS—FOLLOWING STATE DECISIONS.

A single decision of the supreme court of a state, construing a state statute, becomes the settled law of the state, to be followed by federal courts, where it has been acquiesced in for years by the courts of the state and its legislative department.

3. MUNICIPAL BONDS—POWER OF CORPORATION TO ISSUE—IOWA STATUTE.

Code Iowa 1873, § 500, providing that "loans may be negotiated by any municipal corporation in anticipation of the revenue thereof," does not confer authority on such corporations to issue negotiable bonds in payment of such loans. Heins v. Lincoln, 71 N. W. 189, 102 Iowa, 69, followed.

4. SAME—RIGHTS OF PURCHASER OF VOID BONDS.

While a municipal corporation may in some cases be liable for the consideration received for its negotiable bonds, which are void for want of legal authority to issue them, such liability in no case arises on the instruments themselves, which are void for all purposes; and a transferee of such bonds, issued by a town in payment for property, who has no relation to the consideration which passed between the original parties, is not subrogated, by his purchase, to any right of action against the town for its recovery, and cannot, by treating the bonds as merely nonnegotiable evidences of indebtedness incurred by the town for the property purchased, maintain an action thereon.

5. MUNICIPAL CORPORATIONS—PASSAGE OF RESOLUTION—RECORD OF YEAS AND NAYS.

The requirement of Code Iowa 1873, § 493 (as amended by Laws 18th Gen. Assem. c. 146), that "on the passage or adoption of * * * every resolution or order to enter into a contract by any council of any municipal corporation the yeas and nays shall be called and recorded," is fully met where the record states that such a resolution was "carried by the following vote," followed by the names of every member of the council.

6. MUNICIPAL BONDS—EXCEEDING LIMIT OF LAWFUL INDEBTEDNESS—COMPUTATION OF INDEBTEDNESS.

Under the provision of Const. Iowa, art. 11, § 3, that no municipal corporation shall be allowed to become indebted in any manner to an amount in the aggregate exceeding 5 per centum on the value of the taxable property within such corporation, warrants outstanding at the time bonds are issued do not constitute an indebtedness when there is money in the treasury to meet them; and the burden rests upon the corporation, which asserts the invalidity of the bonds on the ground that the indebtedness thereby created, together with the outstanding warrants, exceeded the constitutional limit, to prove that such warrants exceeded the cash in the treasury available for their payment, and by what amount,—the presumption being in favor of the validity of the bonds.

This was an action on negotiable bonds issued by the defendant, the city of Manning, Iowa.

Berryhill & Henry, for plaintiff.
B. I. Salinger and A. B. Cummins, for defendant.

WOOLSON, District Judge. This case is now presented on the merits. Upon the legal question tendered in petition, a decision was handed down in 1897, and is found in 78 Fed. 900. That decision overruled the demurrer interposed by defendant to the original petition. The plaintiff is a citizen of the state of Illinois, and defendant is a citizen of the state of Iowa. The action is based upon five negotiable bonds, severally dated October 23, 1884, for $1,000 each, with interest from date at 8 per cent. per annum, payable semiannually; the bonds maturing October 14, 1894. Interest on these bonds was regularly paid to the date of maturity thereof; so that,

if the bonds are valid, there is due thereon to plaintiff the principal, with interest from October 14, 1894, at the rate of 8 per cent. per annum, payable semiannually.     The defendant is a municipal corporation, being an incorporated town, according to the classification of municipal corporations in force in the state of Iowa at the date of said bonds and yet in force.     The defendant, for its defense herein, while admitting that the papers in suit were signed by its officers, as exhibited, and that plaintiff, before the maturity thereof and for value, became, and is now, the holder and owner thereof, and that nothing has been paid thereon, except interest up to date, including the installment covering October 14, 1894, nevertheless, for the reasons below stated, denies its liability thereunder: (1) Said bonds are void, because defendant had not legal authority to execute same under the Code of Iowa then in force. (2) Denies defendant ever issued or authorized the issue of said bonds. (3) That at the date said bonds are claimed to have been issued, defendant was indebted in a sum largely exceeding the limitation contained in the constitution of the state of Iowa, to wit, in excess of 5 per cent. on the value of the taxable property within such defendant corporation, as ascertained by the last state and county tax lists preceding the issue of said bonds.     It is proper here to state that in the agreed statement of facts filed herein the second ground of defense above stated is waived, by the agreed fact that defendant did issue said bonds.     In its reply, plaintiff avers that what is set out in answer of defendant under its third above-stated defense, as an indebtedness of defendant outstanding at the time the bonds in suit were issued (and which, if valid, would invalidate the bonds in suit), was not a valid indebtedness; but that the bonds which evidenced or constituted such alleged outstanding indebtedness were not valid, in that, at the date of their issue, the aggregate indebtedness then outstanding of the defendant exceeded 5 per centum of the value of the taxable property within the limits of defendant corporation, as ascertained by the last state and county tax lists previous to the issuance of said bonds.

It is due to counsel herein that the findings of the court shall be sufficiently comprehensive to permit a thorough review in the appellate court.     This court has been favored by counsel on either side with exhaustive briefs, supplementing the oral argument.     While perhaps not actually required, in view of the present decision herein reached, yet counsel may properly expect that the findings of the court will cover substantially all the material issues raised by the pleadings.

1. As to the contention of defendant that the bonds in suit are invalid, because, at date of their issue, the aggregate indebtedness of defendant, in violation of the constitutional limitation, exceeded 5 per centum of the taxable property within the defendant corporation, as ascertained by the last preceding state and county tax list:     If the fact claimed is sustained by the evidence, the conclusion claimed must follow.     The limitation prescribed in the constitution of the state of Iowa is correctly given in this contention, and the evidence is undisputed that at the date of issuance of bonds in suit there were outstanding bonds, issued in 1882 by defendant, which, if included in

the then existing aggregate indebtedness of defendant, make such aggregate in excess of the constitutional limitation. It is practically conceded that such 1882 bonds (the bonds in suit were issued in 1884) were themselves, at date of their issue, obnoxious to the above-quoted constitutional limitation. They were, however, treated by defendant as a valid indebtedness, and previous to the institution of the present action had been paid in full. They were thus treated by defendant when the bonds in suit—issue of 1884—were issued.

Defendant contends that, since defendant treated them as valid, and has paid them out of the ordinary revenues of the defendant, the spirit of the constitutional limitation does not apply, and especially so as they were so treated by defendant, and were being so paid, when the bonds in suit were issued. But to my mind the fact that the defendant elected to pay, while the law did not require it to pay, does not convert into an indebtedness that which the law does not recognize as an obligation to pay. There may exist, from the standpoint of mere morals, an obligation which the law does not regard as an obligation enforceable in the courts. The constitutional limitation uses the term "indebted" as meaning an indebtedness which the law will recognize, and by its process enforce. Such a test may readily be applied. The process is simple and uniform. Given the facts, will the law, applied thereto, compel payment? If so, there is an indebtedness. But if the will of the corporation, the mood of its governing officials, is to be the test, there can be no certain or reliable and permanent knowledge as to whether an enforceable indebtedness exists. To-day the officials recognize, and are discharging by payment, a "debt" which the courts would not enforce. Additional bonds, now issued, are obnoxious to the constitutional limitations, because of the former "debt." A month later new officials are installed. They do not recognize the "debt" which their predecessors were paying off, and refuse payment of same. Will the additional bonds, issued as above suggested, no longer be obnoxious to the constitutional limitation, but thus become valid? Or, take the converse: A series of bonds, issued yesterday, are beyond the constitutional limitation and invalid. Hence a series of bonds issued to-day are valid, because the former issue is not, in law, an outstanding indebtedness. Next month a new set of city officials recognize as valid, by paying off, the first set of bonds just above suggested. Does their payment of these bonds, thus rendering them valid, now make this former issue an outstanding indebtedness, and therefore the latter issue thereby become invalid? And what shall be said when the same officials change the course of the corporation during their own administration? These difficulties increase if we accept as the test the will of the corporation in place of the force of the law.

If it be claimed that, because the corporation has paid off such bonds, therefore what the law would not have compelled the corporation to pay has become, because of voluntary payment, an indebtedness, we are yet further than before from an acceptable test; for such "debt," though not recognized as such by the law, is capable at any time of being paid off, and thus a new bond issue cannot

be safely made while the old issue is outstanding. If the fact of payment is to be substituted as a test, in place of the obligation which the law recognizes and enforces, then the validity of a new bond issue would depend, not on the facts existing at the time of the issue, and thus capable of being then ascertained, but on the whim or conclusion of the corporation officials, which may come into existence long after such new bond issue, and which could only be ascertained at time of such issue by one having the gift of prophecy.

The result here reached is, therefore, that if the bond issue of 1882 was invalid, because obnoxious at time of issue to the constitutional limitation, it will not be included when determining the aggregate indebtedness of defendant at time of the issue (1884) of the bonds in suit; and, thus examining, the bonds in suit, so far as this ground of defense is concerned, are valid.

2. Had defendant, at the time these bonds in suit were issued, authority, and was that authority duly exercised, to issue the bonds sued on herein? Plaintiff, as a part of its case, brings into court the bonds, which on their face assert they were issued under section 500 of the Iowa Code of 1873. Said section 500, so far as material herein, is as follows: "Loans may be negotiated by any municipal corporation in anticipation of the revenues thereof. * * *" The question now under consideration was before this court on demurrer to the petition, and was decided adversely to defendant. 78 Fed. 900. Counsel on both sides have reargued the question on the present hearing. I have given it extended consideration and reexamination, in the light of the present argument and the additional cases cited by counsel.

In the former decision herein, reached on demurrer, the judgment of the court on the main question involved was with the defendant, and to the effect that, as a principle of general municipal law, (1) a municipal corporation is not authorized to issue negotiable bonds for loans relating to current expenses, unless the power to issue such bonds was expressly conferred on such corporation; (2) that a loan negotiated in anticipation of revenues, a "borrowing" of money where no delegation of power was by the statute conferred, except the power "to borrow," would not authorize the issuing of negotiable bonds, such as those in suit herein. But the court held the bonds in suit were validly issued, under said section 500, in accordance with the construction of such section theretofore announced by the supreme court of Iowa, and that this court was bound by that construction of the section which the highest court of the state had adopted. This conclusion was reached largely because the only construction of this section by such court was that which I have indicated, and because, in the many years which had passed since such decision was reached, the lawmaking department of the state had made no change therein, but by silence had acquiesced in the force of the statute as thus construed by the supreme court, and such construction had remained unchallenged in such supreme court since the time (1882) of the deliverance of the decision (City of Sioux City v. Weare, 59 Iowa, 95, 12 N. W. 786) on which the former decision on demurrer herein was based.

The present contention of defendant recognizes the force of the quotations in the former opinion herein from Douglass v. Pike Co., 101 U. S. 677:

"As a rule, we treat the construction which the highest court of a state has given the statute of that state as part of the statute, and govern ourselves accordingly."

And:

"This court must recognize this decision of the supreme court of the state as an authoritative construction of the statute, made before the bonds were issued, and to be followed by this court."

It is unnecessary to attempt citations of the many cases wherein the supreme court of the United States have reaffirmed the principle embodied in these quotations.

Defendant, however, insists that the decision given in City of Sioux City v. Weare, supra, is not applicable here, because it is "mere dictum." This court cannot so declare. Apparently there lay directly in the path necessarily to be traveled by the court the very question now under consideration, viz. whether loans negotiated by a city "in anticipation of revenues" could be validly evidenced by negotiable bonds. This point was presented in the pleadings, and the claim thereon made that the bonds were invalid, because of want of power in the city to validly issue same. There was no dispute that the bonds in controversy had been issued under said section 500 of the Iowa Code, in the progress of and as evidencing "loans negotiated" by the municipal corporation "in anticipation of its revenues." If the supreme court had sustained the contention of the defendant therein, viz. that said section 500 did not confer the power to issue negotiable bonds, then it would seem that the defendant therein was entitled to judgment; for said defendant, apparently, could not be held, under the petition in that suit, unless the delivery of these bonds was a payment of the claim against the city. Whether the supreme court of the state might have reached the same conclusion, viz. right of action by the city, by some other process of reasoning, is wholly immaterial here. It had the right to select the grounds on which it would reach and base its conclusions. That which the court had declared material, by making the same the material basis of its decision, this court cannot regard or accept as not material, but must take the decision as it finds it. Again, the court cite, as sustaining the conclusion reached in that opinion, Rogers v. Burlington, 3 Wall. 654. Now the only point in apparent agreement between the case then in progress of decision and the Rogers-Burlington Case is that which is above stated as the basis of the decision in City of Sioux City v. Weare, supra.

Defendant further contends that the principle thus decided in City of Sioux City v. Weare, supra, is not "the settled law of the state." Counsel say:

"In order to warrant the circuit court of the United States in subordinating the decision of the supreme court of the United States to that of a state tribunal, it must be found that the construction has developed into a settled rule; that is to say, it must have been accepted and received as the true meaning of the statute."

This extract from defendant's brief may be accepted as stating the correct rule. How is it to be here applied? Before the decision of City of Sioux City v. Weare, supra, said section 500 had not been construed by the supreme court of the state. After the decision of that case, and until the former decision filed herein, that court had not again had under consideration the said section in the point thus involved in City of Sioux City v. Weare. Certainly, then, that eminent tribunal had given no conflicting decisions on that point. It will scarcely be claimed that a single decision, squarely presented, may not become settled law by acquiescence of years. Surely it is not necessary, in law, any more than in liquids, that a repeated agitation or stirring up is essential to an abiding settlement. Once settled, it so remains until in some manner it is disturbed; and here we had silent acquiescence during 15 years, by supreme and nisi prius courts of the state, as well as of the lawmaking department of the state.

Since the handing down of the former opinion herein, the supreme court of Iowa have had under construction substantially the point heretofore under consideration from said section 500. Heins v. Lincoln, 71 N. W. 189, 102 Iowa, 69, was an action in equity to restrain the issuance of bonds by the city of Cedar Rapids. One point involved is expressly stated (71 N. W. 189, 102 Iowa, 71) to be that "the issue of the bonds is also claimed to be void because not authorized by the city charter." Cedar Rapids was acting under a special charter. That charter (section 54) provides:

"The city council is hereby authorized to borrow money for any object or purpose in their discretion, and to pledge the faith of the city for the payment thereof, provided [here follow provisions for submitting question of borrowing to vote of electors of the city]; and if a majority decided in favor of said loan, then the city council shall by ordinance establish a sinking fund to provide the means to pay off any indebtedness created by virtue of the authority granted in this section."

In that case the bonds were to be issued "to pay or redeem its outstanding general warrants." The supreme court (page 191, 71 N. W., and page 76, 102 Iowa) say:

"The real question is, does this section confer on the city the right to pay its current debts, which are evidenced by city warrants, by issuing long-time, interest-bearing bonds therefor?"

After considering with a good deal of fullness, the general principles governing or prescribing the powers of municipal corporations, that eminent tribunal considers, with much of detail, the authority of the city to issue bonds, in the absence of express statutory authority therefor. Its conclusion is thus stated (page 191, 71 N. W., and page 78, 102 Iowa):

"We do not understand that the power to borrow money vested in a municipal corporation authorizes such corporation to issue bonds in payment therefor, in the absence of express authority to that effect."

The opinion continues:

"We know that some courts have so held, but we are not prepared to assent to the correctness of such holdings."

After quoting from Merrill v. Monticello, 138 U. S. 673, 11 Sup. Ct. 441, that part of the opinion which sustains the above-quoted proposition, the opinion proceeds:

"So, in the case at bar, no express power is given to issue bonds, and none can be implied, because it is not necessary to carry out the objects and purposes of the municipality. * * * It is a familiar rule that all doubts as to the existence of authority of a municipal corporation to do an act must be resolved against it."

After citing various cases, it proceeds (page 192, 71 N. W., and page 79, 102 Iowa):

"Some language used in the case of City of Sioux City v. Weare, 59 Iowa, 98, 12 N. W. 786, may seem to conflict with the views herein expressed, but the facts in that case are different; nor do we think the court intended to adopt the broad rule that, if a municipal corporation had the power to borrow money, it would necessarily follow that it had the power to issue its negotiable bonds therefor, in the absence of express authority so to do."

It would have proven instructive had the learned court stated wherein they regarded the facts in City of Sioux City v. Weare as materially different—that is, a difference so controlling as to lead to a different decision upon this point—from those involved in the Cedar Rapids Case. True, in the latter there was express statutory authority and direction to the city to "establish a sinking fund to provide means to pay" the indebtedness. Such express authority or direction was wholly wanting in the Sioux City Case. It would seem that, if the facts in the Sioux City Case could have sustained therein the decision as we have construed it, there would appear to be no escape from a fortiori conclusion, in the Cedar Rapids Case, that the bonds must be declared valid on the strength of the Sioux City decision, since in the Cedar Rapids Case the statute provided for and compelled the establishment of a sinking fund. It cannot be denied, as confessed by the court, that "some language used" in the Sioux City Case "may seem to conflict with the views" expressed in the Cedar Rapids Case. Except for the above-quoted statement from the opinion delivered in the Cedar Rapids Case, the latter decision would naturally be accepted as an overruling of the former on the point under consideration.

Regarding the Cedar Rapids Case as stating the law of this state, and as modifying the opinion given in the Sioux City Case, the question is presented as to the effect such later (Cedar Rapids) decision must have in the case at bar. Had the latter expressly overruled the former decision, this court would have maintained its ruling heretofore reached on demurrer herein. The legal status of the bonds in suit herein, such bonds having been issued before such overruling, would have been determined with reference to the decision in force at the time of such issuance. With much hesitation, I have concluded that I must accept the Cedar Rapids decision, as construing the force to which the Sioux City decision is entitled. While unable satisfactorily to harmonize the announcement of the supreme court of the state as given in these two decisions, I am impressed with the fact that, except for the Sioux City decision, these bonds can have no valid standing herein. The utterances of the supreme court of the

United States as to such bonds, issued under the circumstances herein shown, are positive, and admit of no doubt. Tested by such utterances, as applicable to municipal bonds generally, the bonds in suit are invalid, because they were issued by a municipality as negotiable bonds, under the power to negotiate loans, i. e. to "borrow money," and without express delegation of power to issue negotiable bonds. Unless there is found in the legislation of this state statutory authority for the issuance by said city of these municipal bonds in their present negotiable form, plaintiff is not entitled to judgment against the defendant; and it is conceded that the only statute, existing at time of their issuance, under which claim can be made for their valid issuance, is section 500 of the Code of Iowa of 1873, above quoted. It is also conceded that that section does not expressly authorize the issuance of negotiable bonds, and that such authority to issue is found, if at all, in the construction given by the supreme court of the state to said section 500. Before this court is justified in deciding that the bonds in suit are not within the general rules announced by the supreme court of the United States, but are exceptions thereto, I must find that the settled law of this state places them without such announced rules. The acceptance of the later utterance of the supreme court of the state as to the force, effect, and intent of its earlier decision compels me to hold, contrary to the holding upon demurrer herein, which was made before such later utterance had been given, that section 500 of the Code of Iowa of 1873 did not authorize a municipality, when borrowing money in anticipation of its revenues, to issue negotiable bonds. This decision necessitates a finding herein for defendant.

I confess that I am not satisfied with this conclusion. The defendant corporation contracted for a system of waterworks for its use and operation. In payment for such system it issued these bonds. It issued them in payment for such waterworks, and as a valid issue, and those entitled to receive payment for the waterworks furnished by them to the city took these bonds, believing them to be valid. During the 10 years between issuance of the bonds and their maturity, the defendant corporation annually paid the interest thereon, without in any manner objecting to their validity. To me it is a matter of great regret that the judgment of this court apparently results in permitting the repudiation by the corporation of what manifestly was by it intended to be, and what was certainly accepted by those furnishing the waterworks as being, the valid obligation of the corporation to pay for its system of waterworks. I shall be heartily pleased if, in appellate proceedings, the judgment herein entered shall be reversed, and good morals and good law go hand in hand in this case, and what was at the time intended to be, and accepted as, the valid obligation of the defendant, as evidenced in the bonds in suit, declared capable of enforcement.

## On Rehearing.

1. After the foregoing opinion was prepared and submitted to counsel, with a draft of finding of facts, additional argument was permitted by the court as upon a rehearing, and also upon an applica-

tion for plaintiff for leave to file an amendment to the original petition herein, for the purpose, as stated in the proposed amendment, of conforming the pleadings to the evidence. The substance of such amendment, which is offered as an additional count, is as follows: That in the year 1884 the defendant, the town of Manning, contracted with the Freeport Machine Company (which is the payee in the bonds in suit) for the erection of a system of waterworks for its use and operation; that such system was duly constructed by said company, and accepted by the defendant town; that said town, having authority under the laws of the state of Iowa to negotiate loans in anticipation of its revenues, instead of negotiating a loan to raise the money with which to discharge its indebtedness to said company, executed and delivered to said company, as evidence of its indebtedness, and of the terms upon which the same was to be paid, the five instruments in writing (being the bonds) set out in the original petition herein; that the plaintiff insurance company thereafter, for value and before maturity thereof, became the owner of such evidences of indebtedness on the part of the town to said Freeport Machine Company, the latter company "thus raising the money for the discharge of said indebtedness on the part of the defendant to it"; that the defendant thereafter paid to plaintiff the interest called for by said bonds until the maturity thereof, to wit, October 14, 1894; that plaintiff is still the holder and owner thereof, and the same, with interest, are wholly unpaid, and judgment is demanded. The substance of the facts alleged in the proposed amendment is clearly proven in the evidence which was introduced on the trial.

It will readily be noted that this proposed additional count changes entirely the line upon which plaintiff claims judgment. It is, therefore, properly named as count 2. The original petition declared on "the instruments of writing" as upon valid negotiable bonds, while this count declares on them as merely "evidences of indebtedness." If the pending action was a suit in equity, this count would be regarded as claiming the right to recover on the theory that plaintiff had become subrogated to the rights of the payee in the bonds or evidences of indebtedness. The bonds are payable to the Freeport Machine Company, or order, and are indorsed by that company in blank as to indorsee, but "without recourse." As to the right of action herein under said count 2, the question presented by defendant is pertinent: Whether without more than said indorsement, plaintiff can recover on said count 2, or claim to be subrogated to the payee's right of action, even if said count 2 is not barred by the statute of limitations. So far as relates to any right which, even in equity, the plaintiff company has to claim to be subrogated to the machine company's rights of action against the defendant, the words of Justice Miller, in Ætna Life Ins. Co. v. Town of Middleport, 124 U. S. 534, 548, 8 Sup. Ct. 625, are pertinent (the names only being changed):

"The payment in this case was a voluntary interference of the [German Insurance] Company in the transaction. It had no claim against the city of [Manning]. It had no interest which required it to pay this debt. If it had stood off, and let the [machine] company and the city work out their own relations to each other, it could have suffered no harm, and no loss. There was no obligation on account of which, or reason why, the complainant should

have connected itself in any way with this transaction, or have paid this money, except the ordinary desire to make a profit in the purchase of bonds. The fact that the bonds were void, whatever right it may have given against the [machine] company, gave it no right to proceed upon another contract and another obligation of the city to the [machine] company."

But this action is at law, and no assignment is claimed, in favor of plaintiff, from the machine company, of whatever cause of action such company held, as for money, etc., of such company expended under contract for waterworks for the city, for which the city had agreed to pay, and had not paid, since the bonds were void.

Counsel for plaintiff has cited some cases holding that the bonds themselves may be treated as mere evidences of indebtedness given by the city, although they are in form negotiable, and so intended and treated by the parties to them at the time of their execution and delivery; that is, that they may be treated as though not negotiable, and recovery had thereon, as either merely evidencing indebtedness, or as notes without elements of negotiability. Without pausing to review these cases, which I have examined, I am content to base my decision on this point upon the case of Dodge v. City of Memphis, 51 Fed. 165, decided in 1892, by Judge Thayer, then district judge of the Eastern district of Missouri, but now one of the circuit judges of this circuit. That case was at law on municipal bonds issued by the city of Memphis in payment of subscriptions of stock to a railroad. These bonds had been declared void by decision of the supreme court of the United States. Said Judge Thayer:

"The theory of plaintiff's counsel seems to be that the first count of the petition is a suit on the bonds, treating them as nonnegotiable instruments; that the bonds evidence the contract of subscription; and that the plaintiff is entitled to sue on the same, ignoring their negotiable quality, precisely as if they were an ordinary nonnegotiable contract, which the town was authorized to make and had made."

This was the count attacked. After referring to the cases cited as supporting the right to recover on such a theory, the learned judge states:

"The authorities show that, if negotiable paper is uttered by a municipal corporation without authority of law, it is void, and a suit cannot be maintained thereon for any purpose."

Numerous cases, decided by the supreme court of the United States, are cited as sustaining this proposition. Referring to the cases cited by plaintiff, Judge Thayer says:

"They show, no doubt, that when a municipal corporation sells bonds which are void, and receives the money, it may be compelled to restore it, in an action for money had and received. So, when a municipal corporation is authorized to purchase property for any purpose, or to contract for the erection of public buildings or for any other public work, and it enters into such authorized contract, but pays for the property acquired or work done in negotiable securities which it has no express or implied power to issue, it may be compelled to pay for that which it has received, in a suit brought for that purpose. In no case, however, does it appear that a suit has been sustained on a void bond, treating it as nonnegotiable, and as something entirely different from what the parties intended it should be. As the court understands the cases, suit must be brought on the implied promise which the law raises to pay the value of that which the municipality has received, but has in fact not paid for, because the securities issued in pretended payment were void."

Further, the amendment cannot be now presented, because it contradicts the statements of the bonds in an important matter, viz.: The bonds, in express terms, recite that they are issued "under the provisions of section 500, Code of Iowa," which has hereinbefore been quoted, and which only deals with the negotiation, by a municipal corporation, of loans in anticipation of its revenue. As given in the bond, the recital is the equivalent of a recital that:

"This bond is issued as part of a loan negotiated in anticipation of the revenues of said town of Manning," etc.

But the amendment offered expressly states that:

"Instead of negotiating a loan to raise the money with which to discharge the indebtedness, the defendant executed and delivered to said company, as evidence of such indebtedness, and of the terms upon which the same was to be paid, the five instruments in writing [meaning the bonds]."

Leave to file the proposed amendment must, therefore, be denied, to which plaintiff excepts.

2. Counsel for defendant attack the action of the council of defendant in issuing bonds under the contract for erecting defendant's waterworks system as invalid because the yeas and nays were not "called and recorded" on the vote taken to so issue, and ask the court to find such omission as a finding of fact herein. Section 493, Code Iowa 1873 (as amended by Laws 18th Gen. Assem. c. 146), requires that:

"On the passage or adoption of * * * every resolution or order to enter into a contract by any council of any municipal corporation, the yeas and nays shall be called and recorded."

There were introduced in evidence the minutes of proceedings had at two meetings of the counsel of defendant with reference to issuing bonds under this contract. They are, in full, as follows:

"Oct. 14, 1884. Special meeting called by the mayor for the purpose of obtaining the views of the council in regard to letting Freeport Machine Co. have town bonds. Members present: Martin, Roush, Sharp, and Funk. The following resolution was read: 'Resolved, by the town council of the town of Manning, Iowa, that the council hereby empower the mayor to issue bonds to the amount of $5,000, and that $3,000 of said amount be paid over to Freeport Machine Co., and balance be held in hands of treasurer until settlement is made and work accepted, at which time balance due on contract to be paid to the Freeport Machine Co.' Carried by following vote: Morrow, Sharp, Roush, Patton, Funk, Schoop. On motion adjourned.          W. K. Lindsay, Rec."

"Called meeting, Dec. 25th, 1884. Council met in called session, at call of the mayor, for the purpose of taking action in regard to approval of waterworks. In absence of mayor, Councilman Sharp apptd. mayor pro tem. Members present: Funk, Patton, Sharp, Morrow, Roush. Verbal report of waterworks committee heard, reporting favorably on acceptance of same. On motion of Morrow, contract of Freeport Machine Co. for building and construction of waterworks as per contract was accepted, and bill presented for above works allowed (Amt., $4,539.43), on the following vote: Yeas—Sharp, Morrow, Funk, Roush, Patton. The following resolution presented and read, and passed on favorably by unanimous vote of the council: 'Whereas, the Freeport Machine Co. of Freeport, Ills., has successfully completed the waterworks, which they agreed to build for the town of Manning, and in accordance with a contract made by said Freeport Machine Co. and the town of Manning, and dated Aug. 14, 1884: Therefore, be it resolved, by the town council of the town of

Manning, that the said waterworks be, and the same are hereby, accepted by the town of Manning as acceptable in every way; and, further, resolved, that the thanks of the town of Manning are due, and are hereby tendered, to the Freeport Machine Co. for the very prompt and efficient work it has done in constructing and completing the said waterworks, thus insuring to the town and its citizens at all times a good supply of water for fire protection and domestic use, placing the water facilities of this town far ahead of most towns of the size in the state.' On motion adjourned.     W. K. Lindsay, Rec."

It will be noticed that these minutes, as to the passage of the resolution authorizing the issue of bonds in suit, do not expressly state that the yeas and nays were "called and recorded." But the minutes do state that such resolution was "carried by the following vote: Morrow, Sharp, Roush, Patton, Funk, Shoop." So that the minutes affirmatively show that the six councilmen, then composing the town council, voted in favor of passage of the resolution. The nays do not appear. It is not expressly stated whether or not they were called. But, since every councilman who was then a member of the town council voted in favor of passing the resolution, it would necessarily follow that no nay vote was cast. If the word "yeas" had been inserted before the names of those by whose vote the minutes declare the motion was carried, the objection raised by counsel for the town would be obviated. But to what degree would the proceedings, then, be more definite than now, on this point? To say that "the following councilmen voted in favor of the passage of the resolution," or that "the resolution was carried by the votes of the following named members of the counsel," or "the resolution was carried by the following vote," with the names of all the members of the council then stated, fulfills the spirit of the statutory requirement that the "yeas and nays be called and recorded" as fully as though it had been expressly stated that, "upon call of the yeas and nays, the result was: Yeas, [naming them]; nays, none." Assuming that the yeas and nays are to be "called and recorded," the purpose of the statutory requirement is as fully met, and by the record each councilman is given his full share of responsibility for voting in favor of the resolution.

3. Counsel for defendant urgently insist that the court failed to consider the item of $800 which the agreed statement of facts states was an outstanding indebtedness of defendant at time the bonds in suit were issued, and that, when said $800 outstanding indebtedness is added to the bonds in suit, the bonds at issue herein constitute an indebtedness in excess of that permissible under the constitution of the state. The constitution provides (section 3, art. 11) that:

"No * * * municipal corporation shall be allowed to become indebted in any manner, or for any purpose, to an amount in the aggregate exceeding five per centum on the value of the taxable property within such * * * corporation. to be ascertained by the last state and county tax lists previous to the incurring of such indebtedness."

The bonds in suit bear date October 23, 1884. The aggregate value of the taxable property within the municipal corporation of Manning, according to the state and county tax lists for 1884, was

$113,623. Five per cent. of the last-named aggregate is $5,681.15. This, then, is the limit, under the constitutional provision above quoted, to which the defendant could "become indebted in any manner or for any purpose." The agreed statement of facts herein states (paragraph 10) that:

"At the time the bonds in suit were issued, the defendant town was already indebted, without reference to the bond issue of September 9, 1882, in the sum of $800."

"The bond issue of September 9, 1882," is the bond issue hereinbefore considered and found invalid. Paragraph 2 of the additional statement of facts states that:

"It is agreed that the floating indebtedness of the defendant, in the sum of $800, referred to in former stipulation, was in existence at all the times at which it is claimed that defendant entered into any contract or contracts."

The contention of defendant is that this $800, added to the $5,000 of bonds in suit, exceed the 5 per centum above shown, and therefore this $5,000 issue, which, added to the $800 floating indebtedness, constitute this excess, is void, as being issued in violation of the constitution. By computation it is ascertained that such aggregate ($5,800) exceeds said 5 per centum on said value of taxable property by $118.85; and, although this excess is a small sum, yet, if it actually existed, it invalidated the loan.

A pertinent inquiry arises as to the meaning of the word "indebted," as used in the constitution. Defendant insists that, whatever its meaning, the excessive indebtedness is proven, because the phraseology—"indebted"—of the agreed statement of facts (paragraph 10, supra) is the same as that contained in such constitutional provision. It may be noted, however, that the paragraph above quoted from the additional agreed statement of facts denominates this indebtedness as a "floating indebtedness." We may therefore conclude that such indebtedness was, at the highest, evidenced by outstanding warrants. The agreed statement of facts and the evidence introduced are equally silent as to the condition of defendant's treasury at the date of the issuance of the bonds in suit. If there were no money in its treasury, the $800 of outstanding warrants was undoubtedly an indebtedness. But, if there were $800 in the town treasury, would this "floating indebtedness" constitute an indebtedness within the meaning of the constitution as above quoted? Whenever the warrants were presented, they could be promptly paid. As rapidly as they were thus paid, this "floating indebtedness" would be thereby reduced. If all were presented, no indebtedness would remain. But, if they remained outstanding because, and only because, they were not presented for payment, can this constitutional prohibition apply? In justice to the town, ought it, then, to apply?

We turn to the decisions of the supreme court of this state, to ascertain whether that court has construed this portion of the constitution, and find the matter considered and decided in Dively v. City of Cedar Falls, 27 Iowa, 227, 232. This was an action at law, based on "scrip," or warrants, wherein the city pleaded that the

indebtedness created by the issue of this scrip exceeded the constitutional limitation. The court, speaking by Wright, J., say:

"Testimony was introduced to show the aggregate of the tax lists within the corporation, * * * and that 5 per centum of either would fall below the whole amount of scrip issued. But, this conceded, the question actually arising is scarcely touched. There is no particle of testimony warranting the conclusion that, when the scrip in suit was issued, the town was 'indebted in any manner' in another cent. Indeed, we do not know but there was money in the treasury to pay this [scrip], and more than this. If a municipal corporation has the money in its treasury to meet its indebtedness, the issue of warrants to the amount of $20,000, or any other sum, however great, over 5 per cent. of its taxable property, would not be a violation of the constitution. In such a case, it would not 'become indebted,' within the meaning of the clause under consideration."

As before stated, the indebtedness, if the $800 is counted in with the $5,000 bonds, is but $118.85 in excess of the 5 per centum. If, then, there was that amount of cash ($118.85) in defendant's treasury when the bonds were issued, this aggregate indebtedness does not fall within the constitutional limitation. In the absence of any evidence on such point, what is the presumption? The officers of the town were in duty bound, by the obligations imposed on them as such, to observe the constitutional limitation. The creation of a municipal indebtedness beyond that limitation would be in violation of the duty imposed upon them, and contrary to their oath to support the constitution of the state. The rule is well settled, and needs no citation of authorities in its support, that the presumption is in favor of the performance of official duty.

Again, upon the defendant, which is seeking to escape payment of what it issued in the form of, and as, a valid obligation, rests the burden of proof, when it asserts such obligation is not valid and enforceable. It asserts an indebtedness on its part in excess of the constitutional limitation. If the proof fail to show such an excess, the burden is not sustained; and, when less than $120 cash in the municipal treasury at date of issue of these outstanding bonds would defeat this defense of alleged excess, the court may well demand satisfactory proof before such excess is declared, and especially when the record shows with what faithfulness and complete satisfaction to the town the payee of the bonds in suit complied with his contract, for whose payment said bonds were issued. When the town has received a system of waterworks which so fully satisfies the town that it tenders its thanks to the contractor for his "very prompt and efficient work in constructing and completing said works," and formally enters on its council records that thereby there is "insured to the town and its citizens at all times a good supply of water for fire protection and domestic use," and that thereby the contractor has "placed the water facilities of this town far ahead of most towns of its size in the state," the court may well decline to declare as invalid the bonds issued, and accepted as being valid, in payment for such waterworks, until the court shall find every essential requisite to this defense has been fully and satisfactorily met. "The laborer is worthy of his hire." The courts should favor his full payment. The labor having been satisfactorily performed,

the court will not refuse its assistance in compelling payment, except where the law, applied to the facts, irresistibly and inevitably stays the arm of the court.

Upon the whole case, and after reconsideration of the original argument, as well as examination of the cases cited on rehearing, I sincerely regret that I am not able to change the judgment hereinbefore directed. Judgment must be entered for defendant.

I find the following facts proven herein:

(1) At the date of the commencement of this action, plaintiff, the German Insurance Company of Freeport, Ill., was a corporation, organized under the laws of the state of Illinois, and a citizen of that state, and defendant, the city of Manning, was a municipal corporation, within the meaning of section 3 of article 11 of the constitution of the state of Iowa, to wit, an incorporated town, incorporated in March, 1882, under the laws of Iowa, and a citizen of Iowa.

(2) After proceedings duly had therefor under the laws of the state of Iowa, the defendant contracted with the Freeport Machine Company of Freeport, Ill., for the erection of a system of waterworks for defendant for fire protection; said works were erected, and, on settlement therefor, the defendant, on October 23, 1884, issued the five bonds in suit; and plaintiff, for value and before maturity, purchased said bonds in due course of business, and is now the holder and owner thereof. A copy of one of said bonds is as follows:

"Number 1.　　　　　　United States of America.　　　　　$1,000.00.
　　"State of Iowa.　　　　　　　　　　　　City of Manning, Ia.

"The city of Manning, in the county of Carroll and state of Iowa, for value received, promises to pay Freeport Machine Co. of Freeport, Ills., or order, at the Farmers' and Traders' Bank, Manning, Iowa, on the 14th day of October, 1894, the sum of one thousand dollars, with interest at the rate of 8 per cent. per annum, payable at Manning, Iowa, semiannually, on the 14th day of April and Oct. 14th in each year, on presentation and surrender of the interest coupons hereto attached.

"This bond is issued by the city of Manning, Iowa, under the provisions of section 500, chapter 10, of title 4, of the Code of 1873 of Iowa, and in conformity with a resolution of the council of said city of Manning, Iowa, adopted at a regular session of said council on the 14th day of Oct., 1884.

"In testimony whereof, the said city of Manning, Iowa, has caused this bond to be signed by the treasurer and countersigned by the mayor of said city of Manning, Iowa, this 23rd day of Oct., 1884.　　　　　　　　D. W. Sutherland,
　　　　　　　　　　　　　　　　　　"Treasurer of the City of Manning, Iowa.
　　"J. W. Martin,
　　　　"Mayor of the City of Manning, Iowa."

Indorsed on back: "Without recourse. Freeport Machine Co., W. S. Lamb, Treasr."

The other four bonds are identical with that above copied, except as to number, said bonds being numbered, respectively, Nos. 1, 2, 3, 4, and 5. The interest on each of said bonds has been by said defendant paid up to and including the installment by terms of bond falling due on October 14, 1894, that date being the maturity of said bonds, and such payments of interest were made by defendant without defendant making any question or objection with respect to the validity of said bonds.

(3) On September 9, 1882, the defendant, city of Manning, issued a series of 10 bonds, each being for $500, a copy of one of said bonds being as follows:

"No. 1. $500.

"Bond of the Incorporated Town of Manning, Carroll County, State of Iowa.

"(One of a Series of Ten Bonds, Amounting to $5,000.)

"Know all men by these presents, that the incorporated town of Manning, of the county of Carroll and state of Iowa, for value received, is indebted to the bearer in the sum of five hundred dollars, which incorporated town of Manning hereby promises to pay on or before the ninth day of September, A. D. 1892, at Manning, with exchange on New York, at the rate of seven per cent. per annum, on the ninth day of September of each year, upon presentation of the interest-bearing coupons hereto attached as they become due. The said incorporated town of Manning consists of the following described territory, to wit: All of section seventeen, the east half of the east half of section eighteen, the northeast one-fourth of the northeast one-fourth of section nineteen, and the north one-half of the north one-half of section twenty, township eighty-two north, of range thirty-six west of the Fifth principal meridian, Carroll county, Iowa.

"This bond is issued under and by virtue of an act of the general assembly of the state of Iowa, entitled 'An act to authorize incorporated towns and cities to procure and donate to railway companies, sites of depots,' etc., additional to Code, title four, chapter ten (relating to cities and towns), of the Nineteenth general assembly. Allowed in accordance with a vote of the qualified electors of said incorporated town of Manning, held at Manning, Iowa, September fifth, 1882.

"Dated at Manning, Carroll county, Iowa, this ninth day of September, 1882.

"M. Hoffmann, John L. McQuaid, }
"M. F. Spear, R. F. Tidd, } Trustees.
"P. A. Emery, J. M. Turner, }

"J. B. Ingledue, Mayor.
"[Seal.] Geo. C. Hunt, Recorder."

That attached to each of said bonds were 10 annual coupons, similar to the following:

"$35. No. 10.

"Manning, Iowa, September 9, 1882.

"The incorporated town of Manning, Carroll county, Iowa, will pay the bearer September 9, 1892, thirty-five dollars, being one year's interest on incorporated bonds.

"M. F. Spear, R. F. Tidd, }
"M. Hoffmann, P. A. Emery, } Trustees.
"John L. McQuaid, J. M. Turner, }

"J. B. Ingledue, Mayor.
"G. C. Hunt, Recorder."

Stamped on the face: "A. T. Bennett. Paid December 15, 1891."
Stamped on the back: "Pay to O. E. Dutton. Platt Peck." "Pay to the order of Platt Peck. John Peck, per L. W. Peck, His Son."

That each of said 10 bonds was identical with that above copied, save as to serial number, such bonds bearing, respectively, serial numbers 1 to 10 inclusive; that when the 5 bonds described in the preceding paragraph (2) were issued, these 10 bonds (issue 1882) were outstanding, but before the institution of the present pending action said bonds in this paragraph described had been paid off and canceled out of the ordinary revenues of defendant.

(4) At the time said (September, 1882) bonds, described in last preceding paragraph (3) of these findings of fact, were issued, the amount

thereof was in the aggregate in excess of 5 per centum on the value of the taxable property of said corporation defendant as ascertained by the last state and county tax lists previous to the incurring of such indebtedness. After the incorporation of said defendant, and previous to the issue of said last-described bonds, no county and state tax lists of property situated within the corporate limits of said defendant were made, on assessments limited to property within such corporate limits; but the aggregate value of the said property, so situated within said corporate limits, according to the last state and county tax lists preceding issuance of said bonds, was $5,252,—viz. real property, $4,940, and personal property, $312.

(5) At the time the said bonds in suit (issue of 1884) were issued, the defendant town was indebted—i. e. had a floating indebtedness outstanding—in the sum of $800, without reference to the said issues of bonds in 1882 and 1884; but the evidence does not show, and I am not able to find, what, if any, amount of money was in the treasury of the defendant town at the time when said $800 indebtedness was incurred, or when any evidence thereof was issued, or when the said 1884 bonds were issued.

(6) The aggregate value of the taxable property within the defendant corporation, as ascertained by the state and county tax lists for the year 1883, was $100,776.

(7) The aggregate value of the taxable property within the defendant corporation, as ascertained by the state and county tax lists for the year 1884, was $113,623.

(8) The outstanding indebtedness of the defendant corporation at the date (October, 1884) when the bonds in suit herein were issued, and including said bonds, was not, in the aggregate, an amount exceeding 5 per centum of the taxable property within said defendant corporation, as ascertained by the last state and county tax lists previous to said issue.

(9) Said bonds in suit herein were by defendant corporation issued and negotiated as a loan by said defendant in anticipation of the revenues thereof, in attempted compliance with section 500 of the Code of 1873 of Iowa, which section, so far as material to the issues herein, reads as follows:

"Sec. 500. Loans may be negotiated by any municipal corporation in anticipation of the revenues thereof." .

As conclusions of law, I find:

1. That the said bonds, issued in September, 1882, as above found in paragraph 3 of findings of fact, were invalid, and did not constitute an outstanding indebtedness against said defendant corporation at the date (October, 1884) of issuance of bonds herein.

2. That the defendant did not possess legal authority to issue the negotiable bonds in suit, under said section 500, Code Iowa 1873, that said bonds are invalid, and that plaintiff cannot herein recover thereon.

3. Judgment must be rendered for defendant, with taxable costs herein.