W. S. HALLYBURTON, AND SUCH OTHER PERSONS IN INTEREST AS MAY CHOOSE TO MAKE THEMSELVES PARTIES HERETO, v. BOARD OF EDUCATION OF BURKE COUNTY AND BOARD OF COMMISSIONERS FOR THE COUNTY OF BURKE.

(Filed 2 February, 1938.)

1. **Taxation § 3—Art. V, sec. 4, imposes definite check on increase of debt by State, county or municipality, except with approval of voters.**

    The language of Art. V, sec. 4, of the State Constitution, as amended, is unambiguous, and by its plain terms the power of the State, or any county or municipality to contract debts in any biennium or fiscal year, respectively, without submitting the matter to a vote of the people, except for those purposes specifically enumerated in the amendment, is definitely prescribed to two-thirds of the amount by which its outstanding indebtedness was decreased during the prior biennium or fiscal year.

2. **Same—Limitation prescribed by Art. V, sec. 4, is in addition to limitations prescribed by Art. VII, sec. 7, and Art. V, sec. 6.**

    The limitation of Art. V, sec. 4, on the contraction of debt by counties and municipalities is in addition to the limitations prescribed by Art. VII, sec. 7, and Art. V, sec. 6, and such local units may not create debts and issue bonds without a vote of the people, even for necessary expenses within the limitation prescribed by Art. V, sec. 6, without the approval

of the Legislature, or in excess of the limitation prescribed by Art. V, sec. 6, with the special approval of the Legislature, unless such bonds, together with such other bonds as may have been issued during the fiscal year, do not exceed two-thirds of the amount by which such unit decreased its outstanding indebtedness during the prior fiscal year.

3. **Same—Method of determining amount of debt contracted in fiscal year within meaning of Art. V, sec. 4.**

In determining the amount of debt contracted in any fiscal year within the provision of Art. V, sec. 4, limiting the power of a taxing unit to contract debts to two-thirds the amount by which the taxing unit's outstanding debt was decreased during the prior fiscal year, the total amount of bonds issued during the fiscal year, by the taxing unit, whether with or without the approval of its voters, should be included, except bonds issued by it to fund or refund a valid existing debt, to supply a casual deficit, to suppress riots or insurrections, or to repel invasions, and except tax anticipation notes issued in an amount not exceeding fifty per centum of the taxes for the fiscal year.

4. **Same—County may not borrow money for necessary expenses without vote when its outstanding debt was not reduced during prior fiscal year.**

The findings of fact disclosed that defendant county had not reduced its outstanding indebtedness during the prior fiscal year, and that it proposed to borrow money and issue its bonds to erect a schoolhouse necessary for the maintenance of the constitutional school term in the county, without submitting the question of borrowing the money to the qualified voters of the county. *Held:* The limitation prescribed by Art. V, sec. 4, as amended, is in addition to other constitutional limitations relating to taxation, and the county may not borrow money, even for a necessary expense, without submitting the question to a vote, Art. VII, sec. 7, when its outstanding indebtedness has not been reduced during the prior fiscal year, and plaintiff taxpayer is entitled to injunctive relief restraining the issuance of the proposed bonds.

APPEAL by defendants from *Warlick, J.,* at Chambers. From BURKE. Affirmed.

This is a civil action instituted by the plaintiff against the defendants to restrain the defendants from borrowing certain money from the State Literary Loan Fund, or from any other source, and from the issuance of bonds by said county for the purpose of constructing a high school building in Burke County, without a vote of the people. The hearing on the motion to show cause was had in Charlotte, N. C., by consent. At said hearing the court entered a judgment permanently restraining the commissioners of Burke County from contracting the proposed debt until the question of the increase of the public debt of the county had been submitted to the people of Burke County qualified to vote thereon, or until such time as the issuance thereof, in some subsequent fiscal year, became permissible under the terms of Article V, sec. 4, of the Constitution. The defendants excepted and appealed.

*C. E. Cowan for plaintiff, appellee.*
*Ervin & Butler for defendants, appellants.*

BARNHILL, J.    The facts upon which the judgment of the court below was based were found by consent and are in substance as follows:

The plaintiff is a citizen and taxpayer of Burke County, and he instituted this action in good faith to test the validity of the proposed bonds. Burke County, through its board of county commissioners and at the request of the board of education, is negotiating a loan from the State Literary Fund in the sum of $37,000 for the purpose of erecting and equipping certain school buildings in Burke County. Burke County, during the fiscal year ending 30 June, 1937, failed to decrease its outstanding indebtedness, but, on the contrary, increased said indebtedness in the sum of more than $27,000. The board of commissioners of said county is in good faith undertaking to contract the loan from the State Literary Fund in the sum of $37,000, with the aim, desire and intent to comply with the mandatory provisions of the fundamental law of the State with respect to education. The improvements contemplated, and for which the fund is to be borrowed, are to take care of the necessary school buildings of the county. The question of borrowing money and increasing the public debt has not been submitted to a vote of the people and by them refused or ratified. The proposed issuance of bonds in the sum of $37,000 to the State Literary Fund would be and constitute a debt as against Burke County.

The question presented to us on this appeal involves the interpretation of Article V, sec. 4, of the Constitution of North Carolina, as amended at the general election in 1936, the question of such amendment being submitted to the people by authority of Public Laws 1935, ch. 248, sec. 3. If the proposed bonds under the admitted facts in this case are prohibited by said section the judgment below must be affirmed, otherwise the bonds are for a necessary expense and are authorized by the Legislature.

Article V, sec. 4, as contained in the Constitution as originally adopted, provided a restriction upon the increase of the public debt of the State, except that no limitation was placed upon the power of the Legislature to contract any new debt to supply (1) a casual deficit, or (2) for suppressing invasion or insurrection. For any other purpose no new debt could be contracted until the bonds of the State should be at par.

The financial condition of the State at the time of the adoption of the Constitution was such that the provisions of this section as then written provided an ample safeguard against any undue increase of the public debt. However, the financial condition of the State in its gradual

growth became so improved that the cited provisions of this section became for all practical purposes obsolete and no longer provided the safeguard the people of the State seemingly have at all times desired to place upon the governing authorities of the State. So, at the general election of 1924, under authority of Public Laws 1923, ch. 145, sec. 4 of Article V as originally adopted was stricken out and a new section substituted as follows:

"Sec. 4. *Restrictions upon the increase of the public debt in certain contingencies.* Except for refunding of valid bonded debt, and except to supply a casual deficit, or for suppressing invasions or insurrections, the General Assembly shall have no power to contract any new debt or pecuniary obligation in behalf of the State to an amount exceeding in the aggregate, including the then existing debt recognized by the State, and deducting sinking funds then on hand, and the par value of the stock in the Carolina Railroad Company and the Atlantic and North Carolina Railroad Company owned by the State, seven and one-half per cent of the assessed valuation of taxable property within the State as last fixed for taxation. And the General Assembly shall have no power to give or lend the credit of the State in aid of any person, association, or corporation, except to aid in the completion of such railroads as may be unfinished at the time of the adoption of this Constitution, or in which the State has a direct pecuniary interest, unless the subject be submitted to a direct vote of the people of the State, and be approved by a majority of those who shall vote thereon."

It will be noted that this section is in substantially the same language as the original section, except that the basis of the limitation was changed. Under the original section, with certain exceptions, *no* bonds could be issued and *no* debt contracted "until the bonds of the State shall be at par." Under the original section so long as, or whenever, the bonds of the State could be sold at par, the sky was the limit. Under the 1924 amendment the General Assembly had no power to contract any new debt or pecuniary obligation in behalf of the State (with certain exceptions) to an amount exceeding in the aggregate . . . 7½ per cent of the assessed valuation of taxable property within the State as last fixed for taxation. Under this section the power of the State to issue bonds fluctuated as the assessed valuation of taxable property within the State increased or decreased, and the power of the Legislature to issue bonds could be increased by an arbitrary increase in the valuation of taxable property.

It is well now to note that neither the section as originally incorporated in the Constitution nor the section as substituted in 1924 undertook in any manner to limit the right of the governing authorities of local governmental units in their right to increase local debts, nor did

they seek to impose any limitation on the right of the Legislature to grant authority to local units to increase their debts.

Just prior to and during the period immediately succeeding the amendment of 1924 both the State and all of its subdivisions engaged in an extensive expansion, which necessitated a large increase in the debt of the State and of the municipalities of the State. In 1920 the State debt was less than $11,000,000. In 1935 it had grown to more than $150,-000,000. There does not seem to be any reliable record of the bonded indebtedness of the municipalities in 1920, but we may safely say that such debts increased 100 per cent from 1920 to 1935.

Realizing that the then existing provisions of Article V, sec. 4, did not provide any adequate check against the increasing bonded indebtedness of the State and its subdivisions, and desiring to put some adequate curb upon the growing tendency to incur debt for permanent improvements, the people of the State at the general election in 1936, under authority of Public Laws 1935, ch. 248, sec. 3, again amended Article V, sec. 4, by striking out all of said sections as it then existed down to and including the word "taxation" in line 12, and substituting in lieu thereof the following:

"Sec. 4. *Limitations upon the increase of public debts.* The General Assembly shall have the power to contract debts and to pledge the faith and credit of the State and to authorize counties and municipalities to contract debts and pledge their faith and credit for the following purposes:

"To fund or refund a valid existing debt;

"To borrow in anticipation of the collection of taxes due and payable within the fiscal year to an amount not exceeding fifty per centum of such taxes;

"To supply a casual deficit;

"To suppress riots or insurrections, or to repel invasions.

"For any purpose other than these enumerated, the General Assembly shall have no power, during any biennium, to contract new debts on behalf of the State to an amount in excess of two-thirds of the amount by which the State's outstanding indebtedness shall have been reduced during the next preceding biennium, unless the subject be submitted to a vote of the people of the State; and for any purpose other than these enumerated the General Assembly shall have no power to authorize counties or municipalities to contract debts, and counties and municipalities shall not contract debts, during any fiscal year, to an amount exceeding two-thirds of the amount by which the outstanding indebtedness of the particular county or municipality shall have been reduced during the next preceding fiscal year, unless the subject be submitted to a vote of the people of the particular county or municipality. In any election held in the State or in any county or municipality under the

provisions of this section, the proposed indebtedness must be approved by a majority of those who shall vote thereon."

Do the provisions of this section as so amended prohibit the issuance of the proposed bonds by Burke County? We are of the opinion that a proper interpretation of the language of this constitutional provision leads to the conclusion that it does prohibit the proposed bonds and that Burke County is without authority to increase its public debt during the present fiscal year in any amount without a vote of the people except for one or more of the four purposes first enumerated in the amendment.

Under this section the right of the State, or of any county or municipality, to contract debts and pledge its faith and credit is definitely prescribed. There is no limitation upon the right of the State to contract debts and to pledge its faith and credit, or upon the right of the State Legislature to authorize counties and municipalities to contract debts and pledge their faith and credit: (1) To fund or refund a valid existing debt; (2) to borrow in anticipation of the collection of taxes due and payable within the fiscal year to an amount not exceeding 50 per centum of such taxes; (3) to supply a casual deficit; or (4) to suppress riots or insurrections, or to repel invasions.

For *any purpose* other than these enumerated the General Assembly has no power during any biennium to contract new debts on behalf of the State to an amount in excess of two-thirds of the amount by which the State's outstanding indebtedness shall have been reduced during the preceding biennium unless the subject be submitted to a vote of the people of the State.

Except for the purposes enumerated the General Assembly has no power to authorize counties or municipalities to contract debts, and counties and municipalities are forbidden to contract debts, during any fiscal year, to an amount exceeding two-thirds of the amount by which the outstanding indebtedness of the particular county or municipality shall have been reduced during the next preceding fiscal year, unless the subject be submitted to a vote of the people of the particular county or municipality.

The language of Article V, sec. 4, as it presently exists is unambiguous, plain and direct. Its terms are definite and certain. The limitations this section places upon the debt increasing power of the State and of the counties and other municipalities of the State are in such terms that "he who runs may read" and understand. A compliance therewith gives assurance to the people of the State that the counties, cities and towns of the State must of necessity put their financial houses in order and forever hereafter, so long as the amendment exists, avoid the harassing conditions the recent economic depression created in most of the counties, cities and towns, resulting in default by many of them in the payment of their honest and just obligations.

As stated, until the adoption of this amendment in 1936, this section imposed no limitations upon the right of the State to grant counties, cities and towns special approval to levy taxes for a special purpose under the provisions of Article V, sec. 6, nor did it limit the right of counties, cities and towns to issue bonds for necessary expenses under Article VII, sec. 7, or to levy taxes for the payment thereof within the provisions of Article V, sec. 6. This section now further limits the right of governing authorities of local governmental units in respect to the creation of debts and the levy of taxes for the payment thereof. The argument that the provisions of this section do not embrace the creation of a debt for necessary expenses and do not prohibit such debt when created within the limitations of Article VII, sec. 7, is not sound. Heretofore local units could issue bonds for necessary expenses without the approval of the people within the taxing limitation provided by Article V, sec. 6, and when special approval was granted by the General Assembly even the limitations contained in the latter section might be disregarded. The amendment is so worded as to limit the creation of debts by local authorities for necessary expenses without a vote of the people, whether such debt is created with or without the special approval of the General Assembly and regardless of the limitations contained in Article V, sec. 6.

So that now, local units may create debts and issue their bonds for necessary expenses without a vote of the people and without special approval of the Legislature, provided that by so doing, taxes in excess of the limitations provided in Article V, sec. 6, are not required, and provided further that the total amount of such bonds and such other bonds as may have been issued during that particular fiscal year do not exceed two-thirds of the total amount by which the public debt of the unit was decreased during the preceding fiscal year. Such local unit may exceed the constitutional limitation on the taxing power by legislative authority without the approval of the voters, provided the total amount of bonds issued by such unit during any fiscal year does not exceed two-thirds of the amount by which the debt of the unit was decreased during the preceding fiscal year. In determining the total amount of bonds issued during any fiscal year all bonds so issued whether approved by a vote of the people or not, must be included: except bonds issued to fund or refund a valid existing debt; tax anticipation notes issued in an amount not exceeding fifty per centum of the taxes for the fiscal year; bonds to supply a casual deficit; and bonds issued to suppress riots or insurrections, or to repel invasions; which need not be taken in consideration in arriving at such total.

It follows that the provisions of Article V, sec. 4, now constitute the dominant or controlling limitation upon the power of local units to contract debts or to issue its bonds, and its provisions are superimposed

upon the limitations contained in Article VII, sec. 7, and in Article V, sec. 6, of the Constitution. To the provisions of the section under consideration the former decisions of this Court must likewise yield and are no longer authoritative except within the limitations of this section.

The wisdom of this section is apparent. Oftentimes minorities demanding the expenditure of public moneys for different purposes, combine their forces and bring such pressure to bear upon public officials (who are usually willing to meet the demands of a substantial group of their constituents) as to cause the creation of two or more debts when neither minority group desired more than one.

It does not leave those communities whose financial affairs are in good condition helpless. If the citizenship of any given local unit is willing to continue its present bonded indebtedness without curtailment, or to increase it, this section puts no additional limitation upon them so long as the expenditures are authorized by public election. It limits only the governing authority of such unit.

The primary duty to provide for a six months public school during each year and to furnish the necessary buildings and equipment therefor rests primarily upon the State. The State in turn is empowered to, and has, delegated to the several counties the duty to furnish the necessary buildings for the constitutional school term. The board of commissioners of a county, however, are without authority to comply with this delegation of power in violation of the provisions of the section of the Constitution under consideration without first submitting the question to a vote of the people. If the people of the county or other municipal corporation will not by their vote authorize an increase of the bonded debt beyond the prescribed limitations the State will have to devise other means to meet the requirements of the Constitution in respect to education.

The judgment below is
Affirmed.