ROBERT ROYAL v. SAMPSON COUNTY, A. E. BAGGETT, as CHAIRMAN, AND J. C. BUTLER AND H. SIVERTSEN, as MEMBERS, AND GERTRUDE WEST, as CLERK, RESPECTIVELY, OF THE BOARD OF COMMISSIONERS OF SAMPSON COUNTY.

(Filed 12 October, 1938.)

1. **Taxation § 3b—Debt retired by application of sinking fund is reduction of outstanding indebtedness within constitutional limitation.**

When a county retires certain of its bonds from its sinking fund, such transaction constitutes a reduction in its outstanding indebtedness within the constitutional provision limiting the contracting of debt by a county or municipality to two-thirds of the amount by which its outstanding indebtedness was reduced during the prior fiscal year, even though the sinking fund was collected over a period of years, the reduction in an outstanding indebtedness being accomplished not when funds are placed in a sinking fund to be applied to the debt, but when the funds are applied to the debt and the obligation extinguished. Art. V, sec. 4.

2. **Same—Failure to complete refunding operation within fiscal year has no material bearing on constitutional limitation on increase of debt.**

During the prior fiscal year defendant county began refunding operations, and during that year issued its refunding bonds, but did not retire the bonds refunded until the first day of the present fiscal year. Plaintiff contended that since both the refunding bonds and the bonds refunded were outstanding during the prior fiscal year, there had been an increase rather than a decrease in the county's outstanding indebtedness during the prior fiscal year. *Held:* The failure of the county to complete its refunding operations during the prior fiscal year is immaterial, and the refunding bonds should not be included in determining the amount by which the county had reduced its outstanding indebtedness during the prior fiscal year within the meaning of the constitutional limitation on an increase of debt by counties and municipalities. Art. V, sec. 4.

APPEAL by plaintiff from *Grady, J.,* at September Term, 1938, of SAMPSON. Affirmed.

The plaintiff brought his action to enjoin the defendants from issuing bonds representing a new indebtedness of the county, as being, under the facts presented, in violation of Article V, section 4, of the Constitution, restricting the creation of debt. The restraining order was dissolved, the injunction denied, and plaintiff appealed. The facts are stated in the opinion.

*Woodrow H. Peterson for plaintiff, appellant.*
*Howard H. Hubbard for defendants, appellees.*

SEAWELL, J. Except for certain purposes expressly named, the North Carolina Constitution prohibits counties and cities from contracting debts during any fiscal year "to an amount exceeding two-thirds of the amount by which the outstanding indebtedness of the particular county or municipality shall have been reduced during the next preceding fiscal year, unless the subject be submitted to a vote of the people of a particular county or municipality." Constitution, Article V, section 4.

The county of Sampson passed the necessary ordinances and proposes to issue and sell $49,500 bonds during the present fiscal year without submission to a vote of the people of the county, basing the right to do so upon the retirement by the county of $89,000 of its outstanding indebtedness during the fiscal year 1937-1938. Such retirement was accomplished by the application of appropriate tax revenues supplemented by a payment from sinking funds which were lawfully applicable to the debt, but in large part collected prior to the "preceding fiscal year." Except for the application of these sinking funds, the reduction of indebtedness would be substantially insufficient to justify the bond issue, since such bond issue would be, in that case, more than two-thirds of the amount to which the indebtedness had been reduced.

Furthermore, during the year 1937-1938, the county of Sampson undertook to refund an indebtedness of $99,000 by the issuing of a similar amount of bonds which had been sold during the fiscal year, but the actual retirement of the bonds they were intended to refund did not take place until 1 July, 1938.

Contending (a) that an application of the sinking fund does not accomplish a reduction of the outstanding indebtedness within the meaning of the Constitution at the time of such application, but that reduction really occurs when the sinking fund is collected for the purpose, which occurred prior to the "preceding fiscal year," and that the bond issue was, therefore, invalid, and (b) that the refunding bonds constituted an increase of indebtedness for the preceding fiscal year, the plaintiff taxpayer brought this action to enjoin the issue of the bonds, and, from an adverse judgment in the Superior Court, appealed.

1. The "net debt" theory advanced by the plaintiff—that is, that in considering the total indebtedness the sinking fund applicable to that debt must first be deducted, has some support. *Briggs v. Greenville County,* 137 S. C., 288, 135 S. E., 153; *German Insurance Co. v. City of Manning* (U. S.), 95 Fed., 597, 610; *Levy v. McClellan,* 196 N. Y., 178, 89 N. E., 569. The contrary is maintained by well reasoned authority. *City of Chicago v. McDonald,* 176 Ill., 404, 52 N. E., 982; *Council Bluff v. Stewart,* 51 Iowa, 385, 1 N. W., 628.

Most of the cases adopting the net debt theory are liberalizing, rather than restrictive, in their tendency to permit municipalities to incur debt beyond the apparent terms of the limiting provisions. They rationalize restrictions according to the prevailing conception of the purpose of the law. From certain points of view we can understand how the conclusion is reached that restrictions upon the power to incur a debt are reasonably satisfied when funds are in hand with which to pay it. *German Insurance Co. v. City of Manning, supra.*

What this Court might do if similar conditions were presented would certainly be *obiter* in this opinion. A conservative view might be that as a legal assumption the inevitability of the application of the sinking fund to the debt is too optimistic.

But these cases cannot be considered compelling authority as applied to the case at bar, since the constitutional and statutory restrictions considered in them are different in important respects from those with which we are dealing, and give rise to substantial differences in construction.

In so far as we have been able to ascertain, the particular form of debt restriction contained in Article V, section 4, of the State Constitution, is peculiar to this State. One important distinction we find is the use of the term "outstanding" as qualifying the indebtedness required to be reduced; and we think this offers a serious obstacle to the adoption of the theory advanced by the plaintiff. The Century Dictionary defines "outstanding": "3. To stand out, remain untouched, unimpaired, unsettled, uncollected, unpaid, or otherwise undetermined." Webster's Unabridged Dictionary defines it: "Undischarged, uncollected, or unpaid." Black's Law Dictionary—on authority of *New York Trust Company v. Portland R. Co.,* 197 Appellate Division, 422, 189 N. Y. S., 346, 350— defines "outstanding" as "constituting an effective obligation."

With the above definitions in mind, the propriety of applying the "net debt theory" to the constitutional provisions under consideration may be tested by shifting the period to be considered. If we select the "preceding fiscal year" as the period during which additions are made to the sinking fund, the rule would permit the county to count such

increase in sinking funds as a debt reduction, although nothing had been paid and the debt had been left outstanding.

The language used in the Constitution seems to be plain and uninvolved and does not contemplate striking a balance between liabilities and assets, even though certain funds may be earmarked for application to the debt. The transaction to which it refers must be carried out actually rather than constructively.

Speaking strictly to the question presented under this head, we are of the opinion that no reduction of outstanding indebtedness occurs by the mere collection of a sinking fund, but does take place when actual payment is made to the creditor out of the sinking fund or other applicable revenues, which results in the extinction of the debt and leaves the creditor without further demands on the revenues or taxing powers of the county or municipality for its satisfaction.

It follows that the county may base its right to incur a new indebtedness upon an application of the sinking fund to the debt when made within the preceding fiscal year, although such sinking fund was collected prior thereto.

2. On the second proposition, it is contended that since Sampson County had a road bond issue in the amount of $99,000 due on 1 July, 1938, and was in the process of refunding this issue by bonds in the same amount, issued on 14 June, 1938 (dated 1 June, 1938), and since both sets of bonds were outstanding on 1 July, 1938, both sets of bonds must be counted in the total indebtedness, which brought about an increase in the indebtedness for the year 1937-1938, rather than a reduction.

We are convinced that the failure to complete the refunding operation within the fiscal year has no material bearing adverse to the present bond issue. By express provision of the Constitution, the restriction placed upon the power of the county or municipality does not extend to the contracting of debts for the purpose of funding or refunding a valid existing debt; and we think the precise point at issue is covered in *Hallyburton v. Board of Education,* 213 N. C., 9, 15, as follows:

"In determining the total amount of bonds issued during any fiscal year all bonds so issued, whether approved by a vote of the people or not, must be included: except bonds issued to fund or refund a valid existing debt; tax anticipation notes issued in an amount not exceeding fifty per centum of the taxes for the fiscal year; bonds to supply a casual deficit; and bonds issued to suppress riots or insurrections, or to repel invasions; which need not be taken in consideration in arriving at such total." Quoted and approved in *Gill v. Charlotte,* 213 N. C., 160, 162.

We regard this as authority for the position that the bonds in question should not be considered an increase of indebtedness because of the fact that the refunding process had not completely cleared during the fiscal year.

3. As we have decided the matter upon the merits of the controversy, we do not consider it necessary to go into the question whether the plaintiff brought his action within the statutory period.

The judgment of the court below is

Affirmed.