J. HERMAN COE v. SURRY COUNTY; M. Q. SNOW, R. P. JONES AND S. M. SMITH, COMMISSIONERS.

(Filed 27 February, 1946.)

**Taxation § 3b—**

During the fiscal year 1944-45 a county made funds available at a banking institution to pay its bonds, and its account was charged with the checks used therefor. The bonds were due 1 July, 1945, and the bonds were marked paid and returned to the county during July, 1945. *Held:* The indebtedness was outstanding at the end of the fiscal year 1944-45 and may not be computed as a reduction in outstanding indebtedness for that fiscal year within the meaning of Art. V, section 4, of the Constitution of North Carolina.

APPEAL by defendants from *Gwyn, J.,* resident of 21st Judicial District, in Chambers at North Wilkesboro, N. C., 18 January, 1946, of SURRY.

Civil action to enjoin issuance of bonds of Surry County for school purposes without a vote of the people.

Counsel for plaintiff and defendants, being of opinion that uncontroverted facts in this action are sufficient to raise the question of law

involved herein, submitted to the court below a statement of agreed facts, pertinent portions of which may be stated in summary as follows:

I. Defendants, Board of Commissioners of the County of Surry, a body politic and corporate, proposing to issue without a vote of the people of the county $55,000 in school building bonds of the county for the purpose of constructing a school building at Dobson, in said county, adopted a bond ordinance on 17 September, 1945, in which it is set forth that "It is necessary to erect and equip a new school building in the town of Dobson, in said county, on land now owned by the County Board of Education, in order that said County may maintain public schools in said county as an administrative agency of the Public School System of the State of North Carolina for the six months term required by the Constitution of North Carolina, and (2) it will be necessary to expend the sum of $55,000 in addition to other available funds, to finance the erection and equipment of said school building; and (3) no provision has been made by local tax or otherwise to raise said sum for said purpose, and (4) The County Board of Education of said County has certified to the Board of Commissioners its concurrence in such determinations and has requested the Board of Commissioners to raise said sum for such purpose by the issuance of bonds of said County, pursuant to the County Finance Act of North Carolina."

II. The bond ordinance also provides that "No debt shall be contracted during any fiscal year by the issuance of bonds pursuant to this bond order if the amount of such debt and all other debts contracted during such fiscal year shall exceed two-thirds of the amount by which the outstanding indebtedness of said County shall have been reduced during the next preceding fiscal year, unless the incurring of such debt shall be submitted to a vote of the people of said county and shall be approved by a majority of those who vote thereon."

III. Between 1 July, 1944, and 30 June, 1945, the County of Surry paid off and discharged bonds and indebtedness due to the State of North Carolina in total amount of $19,650. And in addition thereto, Surry County had outstanding bonds aggregating $65,000 due 1 July, 1945, for the payment of which when due provision was made for raising revenue by taxes levied under the county budget for the fiscal year ending 30 June, 1945. From the taxes as levied sufficient funds were collected to pay off and discharge the bonds due 1 July, 1945, and on 20 June, 1945, the county forwarded to National City Bank of New York and Guaranty Trust Company of New York, at which said bonds were payable, New York exchange checks aggregating $65,000, and funds necessary to pay off and discharge all of said bonds were received by said Bank and said Trust Company on 22 June, 1945, and the checks were charged against the account of Surry County on 20 June, 1945.

Of said bonds $54,000 were marked paid and canceled 2 July, 1945, $3,000 on 3 July, 1945, $2,000 on 5 July, 1945, $4,000 on 9 July, 1945, and $1,000 on each of the dates 11 July, 1945, and 14 August, 1945, and all of said bonds were surrendered to defendant after 1 July, 1945.

IV. Surry County issued no bonds during the fiscal year ending 30 June, 1945, and all debts incurred by the county during the fiscal year were paid prior to the end of such year, and Surry County has not issued any bonds or other evidences of indebtedness during the fiscal year beginning 1 July, 1945.

Upon the agreed facts counsel for plaintiff and counsel for defendants submit to the court the question whether the issuance of bonds of Surry County in the amount of $55,000 without a vote of the people is in violation of Article V, section 4, of the Constitution of North Carolina, which prohibits the issuance of bonds in excess of two-thirds of the amount by which the outstanding indebtedness of a county shall have been reduced during the preceding fiscal year.

The court being of opinion that the issuance of the bonds as proposed would be in violation of Article V, section 4, of the Constitution of North Carolina, granted restraining order as prayed by plaintiff.

Defendants appeal therefrom to Supreme Court and assign error.

*Frank Freeman for plaintiff, appellee.*
*Fred Folger for defendants, appellants.*

WINBORNE, J.    This is the pivotal question for decision on this appeal: Where bonds of a county are payable at a certain banking institution on the first day of a county fiscal year, and before the close of the next preceding fiscal year the county makes available at such institution funds for payment of such bonds, are the bonds outstanding at the close of the latter year within the meaning of Article V, section 4, of the Constitution of North Carolina? The answer is "Yes." See Article V, section 4, of Constitution of North Carolina. *Royal v. Sampson County,* 214 N. C., 259, 199 S. E., 15.

Article V, section 4, of the Constitution of North Carolina, as amended in 1936, after specifying certain purposes for which the General Assembly shall have the power to contract debts and pledge the faith and credit of the State, and for which it may authorize counties and municipalities to contract debts and pledge their faith and credit, provides as follows: "For any purpose other than these enumerated, the General Assembly shall have no power, during any biennium, to contract new debts on behalf of the State to an amount in excess of two-thirds of the amount by which the State's outstanding indebtedness shall have been reduced during the next preceding biennium, unless the subject be submitted

to a vote of the people of the State; and for any purpose other than these enumerated the General Assembly shall have no power to authorize counties or municipalities to contract debts, during any fiscal year, to an amount exceeding two-thirds of the amount by which the outstanding indebtedness of the particular county or municipality shall have been reduced during the next preceding fiscal year, unless the subject be submitted to a vote of the people of the particular county or municipality."

The fiscal year as defined in the County Fiscal Control Act, G. S., 153-114, "is the annual period for the compilation of fiscal operations, and begins on the first day of July and ends on the 30th day of June."

When, then, is indebtedness outstanding within the meaning of the above constitutional provision?

Speaking thereto in the case of *Royal v. Sampson County, supra, Seawell, J.,* writing for the Court, and speaking to the "net debt theory" advanced there, and after defining the term "outstanding" as qualifying the indebtedness required to be reduced, stated: "The language used in the Constitution seems to be plain and uninvolved and does not contemplate striking a balance between liabilities and assets, even though certain sums may be earmarked for application to the debt. The transaction to which it refers must be carried out actually rather than constructively"; and, continuing, "Speaking strictly to the question presented under this head, we are of opinion that no reduction of outstanding indebtedness occurs by the mere collection of a sinking fund, but does take place when actual payment is made to the creditor out of the sinking fund or other applicable revenues, which results in the extinction of the debt and leaves the creditor without further demands on the revenues or taxing powers of the county or municipality for its satisfaction."

It seems clear, therefore, that bonds are outstanding within the meaning of the term of Article V, section 4, of the Constitution, until actually paid and canceled, or delivered to the county for cancellation.

Applying this principle to the case in hand, the $65,000 bonds were not due until 1 July, 1945, the beginning of a new fiscal year, and though funds were provided in the next preceding fiscal year, they were not actually paid to the creditors until after the first of July, 1945; nor were the bonds surrendered until after the beginning of the new fiscal year. Hence, they were outstanding at the close of the next preceding fiscal year, 30 June, 1945, and may not be taken into account in ascertaining the amount by which the county had reduced its outstanding indebtedness in that fiscal year.

The restriction of Article V, section 4, of the Constitution has been applied (1) in the case of *Hallyburton v. Board of Education* (1938), 213 N. C., 9, 195 S. E., 21, where Burke County sought to procure a loan from the State Literary Fund for the purpose of erecting and

equipping certain school buildings in the county without having sub-mitted the question to a vote of the people; and (2) in the case of *Gill v. Charlotte* (1938), 213 N. C., 160, 195 S. E., 368, where the City of Charlotte proposed to issue bonds for street and sewerage construc-tion or extension without a vote of the people. In these cases *Barnhill, J.,* speaking for the Court, discussed the background and purpose of the constitutional provisions in the light of the factual situations in hand. What is said there is appropriate here. We quote in part from the *Hallyburton case, supra:* "It follows that the provisions of Article V, sec. 4, now constitute the dominant or controlling limitation upon the power of local units to contract debts or to issue its bonds, and its pro-visions are superimposed upon the limitations contained in Article VII, sec. 7, and in Article V, sec. 6, of the Constitution. To the provisions of the section under consideration the former decisions of this Court must likewise yield and are no longer authoritative except within the limitations of this section. . . . The primary duty to provide for a six months public school during each year and to furnish the necessary buildings and equipment therefor rests primarily upon the State. The State in turn is empowered to, and has, delegated to the several counties the duty to furnish the necessary buildings for the constitutional school term. The board of commissioners of a county, however, are without authority to comply with this delegation of power in violation of the pro-visions of the section of the Constitution under consideration without first submitting the question to a vote of the people. If the people of the county or other municipal corporation will not by their vote author-ize an increase of the bonded debt beyond the prescribed limitations the State will have to devise other means to meet the requirements of the Constitution in respect to education."

The judgment below is

Affirmed.